Roy Lavern FULLERTON and Dorothy M. Fullerton, Appellants,

v.

Melvin SAUER, Administrator of the Estate of Dwane Sauer, Deceased, Appellee.

Roy Lavern FULLERTON and Dorothy M. Fullerton, Appellants,

v.

Bernard G. FLEETWOOD, Appellee.

Nos. 17713, 17714.

United States Court of Appeals Eighth Circuit.

Oct. 27, 1964.

· John D. Randall, Cedar Rapids, Iowa, for appellants.

John L. Butler, of Lundy, Butler, Wilson & Hall, Eldora, Iowa, James E. Roan, of Mickelson & Roan, Toledo, Iowa, and Ralph W. Gearhart, of Shuttleworth & Ingersoll, Cedar Rapids, Iowa, for appellees.

Before VOGEL, VAN OOSTERHOUT and MEHAFFY, Circuit Judges.

VOGEL, Circuit Judge.

These are civil actions for money damages. They arise out of an automobile accident, were consolidated for trial and tried before the same jury. The parties

will be designated as they were in the court below. Plaintiff Melvin Sauer is the administrator of the estate of his son, Dwane, who was killed in the accident. He brought suit for wrongful death against Roy Lavern Fullerton and Dorothy M. Fullerton, husband and wife, defendants. In the second suit, Bernard G. Fleetwood sued the Fullertons for his personal injuries. Diversity of citizenship and the amount involved in each case satisfied federal court jurisdictional requirements.

The defendants answered and counterclaimed for personal injuries and damage to their automobile. The jury returned verdicts for each of the plaintiffs. From judgments entered thereon defendants appeal.

A stipulation of facts between the parties and read to the jury indicates, in summary, that on August 28, 1960, the defendants, accompanied by their four children, were driving their family car, a 1955 Ford Tudor sedan, in an easterly direction on paved U. S. Highway No. 30 approximately eight miles east of Tama, Iowa. After cresting a hill and proceeding down the east incline thereof a distance of approximately 500 feet, they came upon a car with a "U-Haul" trailer mired in the mud off the paving on the south shoulder. Defendants noticed that a man, a woman and two children were occupants of the disabled vehicle. The time was about 6:30 p. m. The weather was cloudy, a light rain was falling, the pavement was wet. Mr. Fullerton, who was driving, proceeded on east past the disabled car to the first road intersection, turned around and came back. He drove west of the disabled vehicle and trailer, up and beyond the crest of the hill, until he got to a place where he could again turn around. He did so, returning east. At a point just to the west of the crest of the hill he stationed his 13-year-old son, Steven, to slow down traffic coming from the west. Fullerton then drove on east past the crest of the hill to the point where the car and trailer were stuck on the shoulder of the road. Fullerton stopped opposite the mired vehicle. With the use of a log chain, he pulled the car and trailer out onto the pavement. Fullerton then had the man whom he had helped out of the mud from the south shoulder drive around him, as well as traffic that had stopped further up the hill, obviously because of warnings given by Steven. When the traffic was all moving, Mr. Fullerton ran partway up the hill and whistled for his son Steven to come down because the traffic was gone. Steven came down the south shoulder of the road and stopped opposite the right door of the Fullerton car. The stipulation includes the statement: "It is disputed by the parties whether Steven was carrying lighted fusees at the time."

The parties further stipulated that Bernard G. Fleetwood was driving a 1958 Triumph automobile owned by Dwane Sauer, also in an easterly direction on U. S. paved Highway No. 30; that Sauer and Fleetwood were members of the United States Air Force stationed at Scribner Air Base, Hooper, Nebraska, and at the time were on a trip from Scribner Air Base to Beulah, Michigan, and that the Triumph automobile " * * * was then driving into and against defendants' 1955 Ford automobile with such force that plaintiff-decedent was killed as a result of said accident—of said impact, and the driver of said 1958 Triumph automobile was injured."

When struck by the Triumph automobile, the Fullerton car was stopped in the eastbound lane of the highway parallel to the center line and the south edge of the concrete slab almost up to the south curb. The stipulation also provided that the point of impact was approximately 500 feet east of the crest of the hill, that the paved portion of the highway at that point was 24 feet in width and that Fleetwood at the time was driving "about 50 to 55 miles per hour". At the time of impact the Fullerton car was in gear and Fullerton had his foot on the brake.

The jury awarded $15,000 for the wrongful death of Dwane Sauer and $1,085 for Fleetwood's personal injuries.

The testimony of the parties presented to the jury subsequent to the reading of

the stipulation of facts indicates the usual disagreements, disputes and contrarieties which generally accompany the trial of an accident case. Testimony on behalf of the defendants indicated that Steven Fullerton was given two fusees with which to warn traffic; that he used but one of them; that it was still lit and he carried it with him as he came down toward the Fullerton car in answer to his father's whistle, and that he had it in his hand as he approached the right front door of the Fullerton car and asked his father what to do with it, receiving the direction to throw it into the ditch; that he did so and was just stepping into the car when the collision occurred.

On the other hand, Fleetwood testified that he was driving with his headlights on; that they shone about 450 feet ahead on the highway excepting when cresting a hill; that when he first saw the Fullerton car he believed it was moving, he did not think the taillights were burning; that there were headlights coming toward him from the east; that he saw no light which might have been the light of a fusee; that he did not see a man or a boy walking on the south shoulder of the road carrying a fusee; that he did see the taillights of a car which traveled around the Fullerton car and then proceeded on east; that when he first ascertained that the Fullerton car was not moving, he was within less than 300 feet thereof; that he applied the brakes and the car started to skid on the wet pavement; that he could not turn to the left because of what he determined to be westbound traffic so he let up on the brakes and steered for the south shoulder; that when the front of his car was on the shoulder the rear end swung around in a clockwise fashion, making a full turn, then skidded "broadways" so that the right side of the car he was driving hit the rear of the Fullerton car, resulting in the injuries and death.

At the close of the plaintiffs' case, the defendants filed motions to dismiss which were overruled. At the close of all the evidence, defendants made motions for a directed verdict which were likewise overruled.

■■ Defendants' first contention of error is based upon the court's overruling of its motions. We think the court did not err in refusing to take the cases away from the jury. Viewing the evidence in the light most favorable to the plaintiffs—Nicholson v. City of Des Moines, 1954, 246 Iowa 318, 67 N.W.2d 533, 535; Ahmann v. United Air Lines, Inc., 8 Cir., 1963, 313 F.2d 274—it is clearly not such that the minds of reasonable men could not disagree. The court could not say that Fleetwood's speed, stipulated to be between 50 and 55 miles per hour, was unreasonable as a matter of law. It was exactly the same speed Fullerton was traveling when he traversed the same portion of the highway a few minutes before. The matters of lookout and care were questions for the jury. Mr. Fullerton himself recognized the danger of leaving a parked vehicle on the main-traveled portion of the highway just east of the crest of the hill. With laudable caution he passed the disabled car rather than stop and assist it at that time. He drove east to a point where he could turn around, then proceeded to a point west of the crest of the hill. He stationed his son just west of the crest of the hill with fusees to warn traffic and he then proceeded to pull the disabled car out of the mud. His caution up to that point was exemplary. It resulted in eastbound traffic being stopped by his son while he commenced the pulling-out operation. After getting the disabled car onto the pavement, he waved it on around him as well as doing the same for the stopped traffic. Why he did not at that time repeat the precautionary measures he had first used by going east to an intersection and then driving back to pick up his son we do not know, but from his failure to do so we think the jurors were entitled to conclude, as they undoubtedly did by their verdicts, that he was guilty of negligence which was a proximate cause of the accident and the death and injuries.

In Mathews v. Beyer, 1963, 254 Iowa 52, 116 N.W.2d 477, 480, the Supreme Court of Iowa said:

"* * * In Chicago & N. W. Ry. Co. v. Chicago, R. I. & P. R. Co. (D.C., N.D.Iowa), 179 F.Supp. 33, 55, Judge Graven says, from a review of our pertinent cases, this court 'has in its recent decisions tended to emphasize that questions as to proximate cause * * * and concurrent negligence are peculiarly questions for the trier of facts.'"

See, also 65 C.J.S. Negligence § 252, p. 1134:

"The questions whether an emergency existed, and whether a person who was confronted with a sudden emergency exercised such care as an ordinarily prudent man would have exercised, when confronted with a like emergency, ordinarily are questions of fact for the jury. The question whether one was without fault in bringing about an emergency generally is for the jury."

We hold that the trial court was entirely correct in overruling defendants' motions and in submitting these cases to the jury.

Defendants' second contention of error is based upon the court's overruling of objections to the following questions asked on direct examination of plaintiff Fleetwood:

"Q. Is there any action, in your opinion, that you could have taken to have avoided the Fullerton automobile when you discovered it was not moving, other than of attempting to head for the ditch?

"Mr. Randall: Objected to for the reason that it invades the province of the jury, it calls for the interpretation of the witness, of his actions, no fact, and calls for a conclusion with respect to a matter that is not the subject of opinion evidence.

"The Court: Overruled.

"A. No.

"Q. Tell the jury whether or not in your opinion you could have stopped the Triumph automobile by a full application of brakes after the time that you discovered—immediately at the time you discovered the Fullerton car was not moving?

"Mr. Randall: Objected to as leading and suggestive, calling for the opinion and conclusion of the witness with respect to a matter which is not within the province of opinion evidence, and irrelevant, incompetent, immaterial. The witness having heretofore testified that he didn't apply his brakes and that the question calls for speculative testimony which is not material or relevant in any way.

"The Court: Overruled.

"A. No, I could not have stopped."

■■ It is the contention of the defendants that the questions were prejudicially improper in that it was for the jury to determine whether a different course could have been taken to have avoided the Fullerton automobile and whether or not Fleetwood could have stopped the Triumph automobile by full application of the brakes. We do not agree. Plaintiff Fleetwood testified that he had driven cars such as this Triumph before and after the accident; that he tested them as to braking; that the mechanical condition of the Triumph he was driving at the time of the accident was good; that there was nothing unusual in the operation of the brakes; that he tried braking vehicles such as this Triumph on wet paving; that he had an opportunity of applying the brakes prior to the accident. We believe he was qualified to express an opinion as to whether he could have stopped the automobile by full application of the brakes immediately after discovering that the Fullerton car was not moving. We further believe that he was in a position to express an opinion as to whether or not there was any other way of avoiding a collision without attempting to take the ditch. The expression of opinion by a qualified witness as to whether or not an automo-

bile could be stopped within a certain distance upon full application of the brakes and whether there was any other way of avoiding a collision other than by going into the south ditch could well be helpful to the jury in determining the ultimate facts. Rule 43(a), Federal Rules of Civil Procedure, 28 U.S.C.A., provides for the reception of all evidence which is admissible under either the local state or federal rule. See also Rhynard v. Filori, 8 Cir., 1963, 315 F.2d 176, 178; Lofton v. Agee, 8 Cir., 1962, 303 F.2d 287, 288; Solomon Dehydrating Co. v. Guyton, 8 Cir., 1961, 294 F.2d 439, 443; Een v. Consolidated Freightways, D.C. N.D., 1954, 120 F.Supp. 289, affirmed 220 F.2d 82, for the receipt of opinion evidence under similar circumstances. We think the trial judge did not abuse his discretion in overruling the objections and that the receipt of the objected-to answers tended toward arriving at a clearer understanding by the jury and substantial justice between the parties.[1]

In Grismore v. Consolidated Products, 1942, 232 Iowa 328, 5 N.W.2d 646, the Supreme Court of Iowa said at page 654 of 5 N.W.2d:

> " * * * The courts and other authorities uniformly agree that the receipt of opinion evidence, whether lay or expert, and the extent to which it will be received in any particular case, are matters resting largely in the administrative discretion of the court."

See, also, 32 C.J.S. Evidence § 449, p. 85.

Sullivan v. Union Electric Light & Power Co., 1932, 331 Mo. 1065, 56 S.W.2d 97, 104, contained an opinion on the following disputed question:

> "[Q.] Now, let me ask you this, if you had gone right on ahead at that time, if you had not applied your brakes at all and gone right straight on ahead, and the truck kept

coming like it did, would the truck have hit your Ford?"

The appellants objected on the ground that the question called for a conclusion and invaded the province of the jury. The court overruled the objection, and the witness gave the following answer:

> "[A.] I think that the left front fender and the right fender of the truck would have collided."

The court stated:

> " * * * That the answer called for and given was in the nature of a conclusion or opinion may be conceded. The general rule is that a witness must testify to facts, and it is for the jury to draw its conclusions from those facts. But there is a well-recognized exception to that general rule. * * *

> "In Heinbach v. Heinbach, 274 Mo. 301, 316, 202 S.W. 1123, 1127, White, C., speaking for this division, said: 'A nonexpert witness may give his conclusions or deductions when the matter is one which a witness of ordinary intelligence can understand, and such conclusions or deductions of the witness are based upon facts which are incapable of being properly or accurately described by the witness to the jury.' "

In Waterloo Savings Bank v. Waterloo C. F. & N. R., 1953, 244 Iowa 1364, 60 N.W.2d 572, the court said at page 578 of 60 N.W.2d:

> "The pertinent rule here is this [sic] stated in 20 Am.Jur., Evidence, 643, § 771; 'The true solution seems to be that such questions are left for the practical discretion of the trial court.' * * * The kind of testimony to which defendant objects here has been described as a 'shorthand' rendering of facts. It is, in fact, not really an opinion, but at

---

1. McCormick on Evidence, 1954, West. Pub. Co., p. 23:
   "It is believed that the standard actually applied by the trial judges of today approaches more nearly the prin-

ciple espoused by Wigmore, namely that the opinion should be rejected only when it is superfluous in the sense that it will be of no value to the jury." See 7 Wigmore, Evidence, § 1918.

most a conclusion drawn from facts of common observation. * * *

" * * * Under the most favorable holding for defendant the matter was in the discretion of the trial court." [2]

It is next contended by the defendants that the court erred in giving instruction No. 28, the so-called no eye witness rule. Apparently the trial judge felt justified in instructing on the no eye witness rule because of lack of evidence as to what Dwane Sauer was doing immediately prior to and at the time of the accident. Fleetwood testified:

" * * * At the time I crested the hill I was watching the road, I did not see Dwane Sauer from that time up to the time of the accident, I did not see Dwane Sauer. I don't know of anyone who saw Dwane Sauer or what he was doing from the time I crested the hill west of the place of the accident up to the time of the accident."

Roy Fullerton testified:

"At no time did I see the Triumph automobile before the collision."

No other occupant of the Fullerton car saw the Triumph automobile or had an opportunity of observing Dwane Sauer's activities. We believe under the circumstances that the trial court was justified in giving the no eye witness instruction, particularly where he carefully left it up to the jury to determine whether or not there were eye witnesses and to apply the rule only if they found there were none.[3]

The Supreme Court of Iowa had occasion to pass on the no eye witness rule in Lingle v. Minneapolis & St. Louis Ry. Co., 1960, 251 Iowa 1183, 104 N.W.2d 467, 469–470, wherein that court gives the following cogent definition:

"The no eyewitness rule is that where there is no eyewitness and no obtainable direct evidence as to what a decedent did or failed to do by way of precaution at and immediately before the time he was injured there is an inference he was in the exercise of ordinary care for his own safety. * * *

"If the witness who attempts to describe decedent's actions did not see him during all the material moments preceding the injury he is not such an eyewitness as to deprive decedent's estate of the benefit of the inference of care * * *." (Citations omitted.)

---

2. McCormick on Evidence, 1954, West Pub. Co., p. 23, f.n. 14:
   "A long-established 'exception' to the opinion-rule in some states is the practice of admitting 'opinions' where they can be justified as 'shorthand renditions' of a total situation, or as 'statements of collective facts' * * *."

3. Instruction No. 28 was as follows:
   "Further in regard to the question of contributory negligence, you are instructed that where a human being is killed by accident and there is no eye witness and no obtainable direct evidence of the conduct or actions of the decedent immediately prior to and at the time of the accident, the law indulges the inference that the instinct of self-preservation or the love of life was such as to prompt him to exercise ordinary care for his safety. This inference is not conclusive but is a matter to be considered by the jury in connection with all the evidence and is not to be indulged in where there

is direct evidence obtainable as to the person's conduct at and shortly prior to the time of the accident, and in any event is only to be considered in connection with the facts and circumstances as shown in evidence.
   "If you find there is an absence of any obtainable direct evidence as to what Dwane Sauer did or failed to do by way of precaution at and immediately prior to the accident in question, and no eye witness as to the manner in which the said Dwane Sauer was conducting himself just prior to the time it is claimed he was injured, then you have a right to infer that he was exercising that caution which a person of ordinary care and prudence would exercise under like circumstances, unless the facts and circumstances shown in evidence negative such inference, in which event such inference would not exist and you should give no consideration thereto." (Emphasis supplied.)

In Plumb v. Minneapolis & St. Louis Ry. Co., 1958, 249 Iowa 1187, 1189, 91 N.W.2d 380, 385, the Iowa court said:

"It is doubtless true also that if plaintiff was only a passenger in his car at the time of the collision he was required to exercise ordinary care for his own safety although he was not required to exercise the same degree of vigilance in looking and listening as required of the driver. * * *" (Citations omitted.)

In discussing the no eye witness rule, the court said at page 385 of 91 N.W.2d:

" * * * Further, the rule is applicable only where it appears there is no obtainable direct evidence of what a decedent—or an injured person who survives but is unable to testify to the occurrence because of amnesia resulting therefrom—did or failed to do by way of precaution at and immediately before his injury."

We find no error in giving the no eye witness rule.

Defendants' fourth point is that the trial court committed error in giving instructions Nos. 30 and 31, which read as follows:

"Instruction No. 30.

"The plaintiff claims that if it is found that he violated a statute or ordinance in the operation of his motor vehicle, that he had a legal excuse for doing so and was, therefore, not negligent. You are instructed that the burden of proof is upon the plaintiff to establish a legal excuse by a preponderance of the evidence.

"By the term 'legal excuse' is meant:

"1. Anything that would make it impossible to comply with the statute or ordinance.

"2. Anything over which the driver has no control which places his car in a position contrary to the provisions of the statute or ordinance.

"3. When the driver is confronted by an emergency not of his own making, and by reason thereof he fails to obey the statute.

"4. Where the statute specifically provides an excuse or exception.

"If you find that the plaintiff has violated a statute or ordinance, as submitted to you in other instructions, and that he has established a legal excuse for doing so under any one of the four definitions given to you in this instruction, then you should find the plaintiff not negligent for violating the particular statute or ordinance involved.

"Instruction No. 31.

"When one is confronted with a sudden emergency, not brought about by his own fault, and because thereof is required to act upon the impulse of the moment without sufficient time to determine with certainty the best course to pursue, he is not held to the same accuracy of judgment as would be required of him if he had time for deliberation. Under such circumstances he is required to act only as an ordinarily, careful and prudent person would act when suddenly placed in a similar position, and if he so acts he is not liable for injury or damage resulting from his conduct."

Defendants argue that:

"Without conceding that the plaintiffs were entitled to such an instruction which would excuse their negligence under the Doctrine of Sudden Emergency, they were certainly not entitled to two instructions. This Division considers the error of the court in the giving of Instruction No. 30 relating to 'legal excuse' and the giving of Instruction No. 31 relating to 'sudden emergency'."

They claim that:

" * * * The two instructions were not warranted under the facts and the giving of the two instructions over-emphasized the theory of

the defendant and placed too great a burden upon them."

It will be noted that instruction No. 31 is more or less an adjunct or elaboration of paragraph 3 of instruction No. 30 excepting only that paragraph 3 of instruction No. 30 refers to the failure to obey a statute, whereas instruction No. 31 would encompass the violation of a non-statutory common law duty. In Mathews v. Beyer, 1962, 254 Iowa 52, 116 N.W.2d 477, the Supreme Court of Iowa said at page 480 of 116 N.W.2d:

"Keeping a proper lookout is not a statutory duty in Iowa but motorists have a common law duty to exercise ordinary care under the circumstances in maintaining a lookout." (Citations omitted.)

The Plumb case, previously cited, also contains language to the effect that a *passenger* in a car at the time of a collision must exercise ordinary care for his own safety. It seems clear that plaintiffs were entitled to an instruction similar to No. 31 on the doctrine of sudden emergency which would bear on the question of whether they had exercised ordinary care under the circumstances. In Harris v. Clark, 1960, 251 Iowa 807, 103 N.W.2d 215, 217, the Iowa court said:

"Striking the rear of plaintiff's car is evidence of negligence on the part of defendant. However, this does not prevent her from showing the circumstances surrounding the occurrence and if such entitle her to an instruction that she was confronted with a sudden emergency not of her own making it is the court's duty to instruct thereon. * * *" (Citations omitted.)

It also seems clear that plaintiffs were entitled to instruction No. 30 on legal excuse. Harris v. Clark, cited above, defining the doctrine of legal excuse, said at page 217 of 103 N.W.2d:

"In Kisling v. Thierman, 214 Iowa 911, 916, 243 N.W. 552, 554, we said:

'By the term "legal excuse" is meant: * * * 3. Where the driver of the car is confronted by an emergency not of his own making, and by reason thereof he fails to obey the statute. * * *'"

Paragraph 3 of instruction No. 30 correctly states the law of an emergency creating a legal excuse for a violation of a statute or an ordinance.

Additionally, it should be pointed out that the grounds presently urged by the defendants were not called to the attention of the trial court prior to the submission of the case to the jury and should, therefore, not be considered here. In any event, we find no prejudice to the defendants.

Lastly, defendants claim error because of the refusal by the trial court to give an instruction on the "Rescue Doctrine" dealing with the care required of one who is attempting to save others or the property of others from damage or injury. Such instruction was requested and denied. We think properly so. The rescue here had been completed. The rescued persons had been waved on their way. The traffic which had been warned and held up pending the rescue operations had been waved on and had passed the Fullerton car. The only apparent or imminent danger to life or property was to the Fullerton car and its occupants and to traffic coming from the west unless it was warned by Steven at the crest of the hill. Having performed his rescue operation, cleared the highway of traffic excepting his own vehicle, Fullerton threw all caution to the wind, left his car blocking the eastbound traffic lane and called his sentinel back to the car, thus recreating the trap for eastbound traffic which he had so carefully guarded against during the actual rescue. The trial court was correct in denying the requested instruction.

These cases are in all things affirmed.