968 F.2d 1213
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Terry Lee VIRTS, Plaintiff-Appellant,
v.
William Carl BAILEY; Lewis D. Craven, Defendants-Appellees.
 No. 91-1018.
 United States Court of Appeals,
Fourth Circuit.
 Argued: February 7, 1992
Decided: July 27, 1992
 
 1
 Argued: Richard H. Middleton, Jr., Middleton & Anderson, Savannah, Georgia, for Appellant.
 
 
 2
 Robert Holmes Hood, Mark V. Evans, The Hood Law Firm, Charleston, South Carolina, for Appellees.
 
 
 3
 On Brief: Elizabeth F. Bunce, Middleton & Anderson, Savannah, Georgia, for Appellant.
 
 
 4
 Before ERVIN, Chief Judge, NIEMEYER, Circuit Judge, and SPENCER, United States District Judge for the Eastern District of Virginia, sitting by designation.
 
 SPENCER, District Judge:
 
 5
 Appellant Terry Lee Virts was injured when he pulled his motorcycle into the passing lane in front of a truck driven by William C. Bailey and owned by Lewis D. Craven. Mr. Virts filed a lawsuit, alleging negligence, against both the driver and owner of the truck. The case was tried to a jury in October of 1990. The jury returned a verdict for Defendants. Appellant's motion for a new trial was denied on December 12, 1990. Appellant then filed this appeal claiming that the District Court erred in excluding certain evidence and improperly instructing the jury on the doctrine of last clear chance. Finding Virts' contentions to be without merit, we affirm.
 
 I.
 
 6
 On April 24, 1987, four vehicles were traveling eastbound on South Carolina highway Route 21 near Branchville, South Carolina. Route 21 is a two-lane country road and at the time of the collision, visibility was clear for a mile in both directions. On the left side of the street lay a ditch and woods. A recently planted cornfield bordered on the right.
 
 
 7
 Ms. Lorna Guerra, then Mr. Terry Virts' fiancee and now Mrs. Lorna Virts, drove the first car, a red Mustang. Mr. Virts rode two to four car lengths behind his fiancee on a 1981 Harley Davidson motorcycle. Ms. Joyce Bolin followed Mr. Virts in a blue Mustang. All three of these vehicles traveled at approximately 45 to 50 miles per hour ("mph"). Mr. William Bailey operated the fourth vehicle, a truck loaded with fertilizer for his uncle, Mr. Lewis Craven. Mr. Bailey drove at approximately 55 mph.
 
 
 8
 Mr. and Mrs. Virts were returning from a motorcycle shop where Mr. Virts had just had a "top end" job done on his Harley. To properly break in the new engine, Mr. Virts could not exceed 50 mph in the first 300 to 500 miles.
 
 
 9
 As the vehicles proceeded, Mr. Virts pulled out into the passing lane alongside his fiancee. Mr. Virts did not use his blinker when passing. Georgia, the state in which the bike is registered, does not require turn signals on the bike Mr. Virts owned. Accordingly, his motorcycle was not equipped with them.
 
 
 10
 Mr. Franklin Metts and Ms. Bolin both observed Mr. and Mrs. Virts talking back and forth to each other as they traveled down the highway. As the cars passed, Mr. Metts noticed something in Mrs. Virts' hand. Ms. Bolin estimated that the two vehicles traveled side by side, with Mr. Virts in the passing lane, for approximately 45 seconds.
 
 
 11
 Mr. Bailey wanted to pass the three vehicles, and was traveling at 55 mph in order to do so. The maximum speed of the truck is 55 mph. As he approached Ms. Bolin's Mustang, Mr. Bailey put on his turn signal and pulled out to pass. Although he saw Mr. Virts in the left hand lane in front of him, he could not decrease his speed in time to avoid hitting Mr. Virts. He did not realize Mr. Virts was not accelerating past his fiancee.
 
 
 12
 After the accident, Mrs. Virts asked Ms. Bolin to retrieve her camera and some other belongings from the car. Upset, Mrs. Virts expressed remorse for her actions, stating that the accident "was her fault" because she should not have been taking pictures of her fiance on the highway. Mrs. Virts offered the same apologies to Mr. Bailey when the two sat in the hospital following the collision.
 
 
 13
 Mr. Virts did not see Mr. Bailey's truck approaching. Ms. Bolin did not notice Mr. Bailey's truck until he was in the left-hand lane making a passing maneuver. Although Mr. Bailey testified that he braked and blew his horn in order to avoid hitting Mr. Virts, no other eyewitnesses testified that they heard his truck's horn nor that they saw him brake. There were no skid marks at the point of impact, but the truck had anti-skid brakes.
 
 
 14
 At issue in the case below was whether or not Mr. Virts' own contributory negligence barred his recovering any damages. The appellant's theory presumed that if Mr. Virts traveled at 45 mph and Mr. Bailey at 55, Mr. Bailey had the last clear chance to avoid the accident. He simply needed to pay better attention to all the vehicles he attempted to pass, and appreciate the fact that the sound of the motorcycle probably drowned out the sound of his oncoming truck. Since the speed differential was only 10 mph, Mr. Bailey had ample time to slow down and avoid the accident.
 
 
 15
 Appellees, however, contended that the Virts' own negligent behavior counteracted any liability appellees had. Appellees asserted that Mr. Bailey attempted a safe passing maneuver at a reasonable speed. They argued that no reasonable person would have expected Mr. Virts to ride alongside his then fiancee for the extended period of time he did.
 
 II.
 
 16
 We first review the trial court's exclusion of deposition testimony from Mr. Lewis Craven. Appellant wished to introduce evidence of Defendant Craven's failure to have a South Carolina hauling certificate at the time of the accident.[1]
 
 
 17
 In his first complaint, appellant named the Integral Insurance Company as a defendant. By doing this, appellant complied with South Carolina's statutory method of redress when a public hauler is involved in an accident. At one point in his deposition, Mr. Craven testified that he was granted a South Carolina Public Service Commission certificate prior to the accident.
 
 
 18
 Immediately before the scheduled November 1989 trial, however, appellant learned that Mr. Craven did not have a certificate as he had indicated. The state had approved Mr. Craven's application, but would not issue his certificate until he supplied the Commission with proof of insurance. A letter written by the Commission admonished Mr. Craven not to haul until he received the certificate. Mr. Craven received the certificate on May 7; the accident occurred on April 24. As such, the insurer was not a proper defendant.
 
 
 19
 When apprised of this information, the district court granted a continuance until October 1990 so that the individual appellees could prepare their own defenses. In the subsequent trial, the appellant sought to establish negligence per se by proving Mr. Craven's lack of a Public Service Commission Certificate. Appellant also wished to impeach Mr. Craven with his deposition testimony regarding the issuance of the certificate. The trial judge ruled against appellant and excluded evidence concerning Mr. Craven's lack of certification.
 
 
 20
 Appellant confronts an abuse of discretion standard. United States v. Covelli, 738 F.2d 847, 854 (7th Cir.), cert. denied, 469 U.S. 867 (1984); Bonaparte v. Floyd, 354 S.E.2d 40, 47 (S.C. App. 1987) ("The exercise of the judge's discretion will not be disturbed on appeal absent a clear showing of an abuse of discretion, the commission of legal error in its exercise, and prejudice to the rights of the appellant.").
 
 
 21
 The trial judge accurately stated South Carolina law when articulating his reason for excluding the cross examination:"[T]he violation of a statute, although declared negligence per se, must be shown to have been the proximate cause of the injury." Seay v. Southern Ry. Carolina Div., 31 S.E.2d 133 (S.C. 1944). There is not one shred of evidence that would support appellant's position that Mr. Craven's alleged violation of the statute was a proximate cause of Mr. Virts' injuries. Thus the evidence was correctly excluded as irrelevant.
 
 
 22
 Furthermore, a close examination of the deposition transcript reveals that Mr. Craven, after some confusion about the date of issuance, answered the question truthfully. Additional questions by Mr. Virts' counsel led to further confusion regarding the month and year of the certificate's issuance.[2] The district court was well within its discretion to determine that Mr. Craven's deposition testimony could not appropriately be used for impeachment purposes.
 
 III.
 
 23
 The second issue on appeal involves the testimony of appellant's expert witness, Dr. Wattleworth. In order for this Court to reverse the district court's exclusion of this testimony, appellant must show abuse of discretion on the part of the trial judge. Persinger v. Norfolk & Western Ry. Co., 920 F.2d 1185, 1187 (4th Cir. 1990). Again, appellant establishes no error.
 
 
 24
 The trial court recognized Dr. Wattleworth's expertise in accident reconstruction. Based on a study of the record, and on Mr. Bailey's testimony that he saw Mr. Virts' motorcycle in the passing lane five seconds prior to the accident, Dr. Wattleworth concluded that Mr. Bailey could have avoided the collision by braking within seven feet of Mr. Virts' motorcycle. The heart of Dr. Wattleworth's theory follows:
 
 
 25
 Basically all of the testimony from all of the parties here, it would indicate that Mr. Bailey had ample time to have seen Mr. Virts in the left-hand lane, to recognize that he was overtaking Mr. Virts, and to apply his brakes and slow down. Mr. Virts and the other vehicles were traveling about 45 miles an hour. Mr. Bailey was traveling about 55 miles an hour.
 
 
 26
 There is only a 10 mile an hour speed differential there. It would take him a very short distance to brake or bring his speed down to 45 miles an hour, at that point he would no longer be closing on Mr. Virts.... For normal, simple braking reaction situations, the reaction time, their perception reaction time would be about one second.
 
 
 27
 Testimony of Dr. Wattleworth (J.A. at 139-140). The appellant attempted to elicit further conclusions from Dr. Wattleworth which the court forbade.[3] Appellant contends that the trial judge's denial of this expert testimony constitutes reversible error.[4]
 
 
 28
 We rest our determination on the rule that when eyewitnesses provide testimony about an accident scene, expert witnesses may be superfluous. Although courts presume that expert testimony may help a jury, this Circuit allows exclusion of such testimony when it concerns matters "in the common knowledge of jurors." See Persinger, 920 F.2d at 1188; see also Elek v. Boyce, 308 F. Supp. 26, 33 (D.S.C. 1970) (citations omitted) ("[T]he opinion of a witness is not admissible where all the facts are capable of being clearly detailed so that the jury may form the correct conclusions therefrom."). In the case at bar, ample eyewitness testimony existed for a jury to decide the issues without the benefit of Dr. Wattleworth's input.
 
 
 29
 In any event, the contested testimony was cumulative. See United States v. Mark, 943 F.2d 444, 448 (4th Cir. 1991). Dr. Wattleworth had spoken earlier to the ultimate issue of last clear chance, although he did so without using that precise terminology. Appellant accurately notes that an expert witness may render opinion testimony on an ultimate issue in a case. But appellant ignores the fact that in this case the trial court permitted Dr. Wattleworth to opine as to whether or not Mr. Bailey could have decelerated to avoid the accident.[5] We find that the expert and eyewitness testimony at trial sufficiently allowed the jury to draw inferences either way regarding opportunity to avoid the crash.
 
 
 30
 None of the cases appellant cites persuade us to decide otherwise. Two cases upon which appellant relies, both involving the inclusion rather than the exclusion of testimony, emphasize the substantial deference a reviewing court must exercise when examining a trial court's decision. See Hanson v. Waller, 888 F.2d 806 (11th Cir. 1989); United States v. Kinsley, 843 F.2d 383 (9th Cir.), cert. denied, 487 U.S. 1223 (1988). Appellant cites a third inapposite case which discusses the testimony of a party opponent, and not expert testimony. Fullerton v. Sauer, 337 F.2d 474 (8th Cir. 1964). We cannot employ such precedent to reverse the court below.
 
 
 31
 Because Dr. Wattleworth testified as to Mr. Bailey's ability to avoid the accident and because no case law requires us to find otherwise, we affirm the district court's exclusion of expert testimony as within its permissible discretion.
 
 IV.
 
 32
 Finally, we address the propriety of the trial court's jury instruction regarding last clear chance. Erroneous jury instructions mandate reversal only if, based on a review of the record as a whole, this Court deems the error prejudicial. Wellington v. Daniels, 717 F.2d 932, 938 (4th Cir. 1983). When assessing the adequacy of a jury instruction, an appellate court must view the instructions as a whole. See Smith v. University of N. Carolina, 632 F.2d 316, 332 (4th Cir. 1980) (citations omitted).
 
 
 33
 We conclude that, viewed in its entirety, the district court's instruction regarding last clear chance fairly covers the substance of South Carolina law on that doctrine. We find no error, much less prejudice.
 
 
 34
 Appellant's contention otherwise hinges on the court's alleged failure to instruct that the doctrine of last clear chance applied when the appellant could not extricate himself from a position because he was unaware of the danger. Appellant avers that after Mr. Bailey realized Mr. Virts' perilous position, Mr. Bailey had time to avoid the accident by using due care. Appellees, on the other hand, assert that Mr. Bailey lacked the requisite reaction time to avoid the accident.
 
 
 35
 The appellant requested the following instruction, a recommended jury instruction in South Carolina:
 
 
 36
 Contributory negligence on the part of a plaintiff does not bar his recovery if the Doctrine of Last Clear Chance applies. You must not apply this doctrine unless you find that the defendant was negligent and also find that the plaintiff was contributorily negligent as those terms have been defined for you. The Doctrine of Last Clear Chance applies only if you find from the evidence: 1) that the plaintiff was negligent and, as a result thereof, was in a position of danger from which he could not escape by the exercise of ordinary care, whether because it became physically impossible for him to escape or because he was totally unaware of the danger; 2) that the defendant knew or in the exercise of ordinary care should have known that the plaintiff was in a position of danger and further knew, or in the exercise of ordinary care, should have known that the plaintiff was unable to escape therefrom; and, 3) that thereafter the defendant had the last clear chance to avoid the injury and [sic] by the exercise of ordinary care but failed to exercise said ordinary care and such failure was the proximate cause of the injury.
 
 
 37
 South Carolina Recommended Civil Jury Charges (1989) (emphasis supplied).
 
 
 38
 Cases exist where the court explicitly instructed on the inattentiveness of an injured party, as the above instruction does. See Bruin v. Tribble, 238 F.2d 12, 13 (4th Cir. 1956); Young v. Livingston, 147 S.E.2d 624, 626 (S.C. 1966). However, we find that the charge given by the district judge adequately covers a circumstance in which an unaware person is hurt. The instruction repeatedly states that a party must be unable to extricate himself from a perilous position. This includes a circumstance when someone cannot escape because he or she does not know of the danger. As such, the instruction properly represents the facts and the law as applicable to them:
 
 
 39
 Now there are several principles of law that might go to the-there is one other-before I get to them, there is one other way that the plaintiff can recover in this case, and that's what we call the doctrine of last clear chance. Now that occurs when a plaintiff is negligent. He puts himself in a position of harm. Still under some circumstances, even though the plaintiff is guilty of negligence he can recover. And those circumstances, there are certain elements that the plaintiff has got to prove by the greater weight of the evidence. If he is-if the plaintiff is negligent and puts himself in a position of harm, I mean a position of peril through his own negligence, he can still recover from a defendant under these circumstances.
 
 
 40
 The plaintiff first has got to be in a perilous position from which he can't extricate himself or which he can't get out. He has got to be in a perilous position. He put himself there through his own negligence, but he has got to be there in a position that he can't extricate himself from. Reasonably extricate himself.
 
 
 41
 Second, the defendant has got to realize the plaintiff's situation. That is, that the plaintiff is there or the defendant should-the defendant has got to realize it or the defendant should realize it in the exercise of due care that the plaintiff is in a position of peril from which he can't reasonably extricate himself.
 
 
 42
 And, finally, the plaintiff has got to prove that the defendant recognized and should-or should have recognized his perilous position, and the defendant failed himself to use due care to avoid injuring the plaintiff. Now, the plaintiff proves that, that he was negligent and he got in a position where he couldn't reasonably extricate himself, that the defendant recognized that or should have recognized it in the exercise of due care the perilous position that he was in, couldn't extricate himself, and finally that after the defendant recognized it or after he should have recognized it, the defendant failed to use due care to avoid injuring the plaintiff.
 
 
 43
 Now, if the plaintiff makes out that case by the greater weight of the evidence, he can recover provided, of course, that the defendant's conduct is a proximate cause of his injuries.
 
 
 44
 Jury Instruction (J.A. at 180-181) (emphasis supplied).
 
 
 45
 We briefly address Mr. Virts' attempt to meet his burden to show prejudice from the charge as given. See Smith v. Winningham, 166 S.E.2d 825 (S.C. 1969). By means of an affidavit of Ms. Maureen Kenney, a juror, appellant contends that the panel did not apply properly the doctrine of last clear chance. Ms. Kenney attests in her affidavit, taken after the return of the verdict, that she specifically raised the issue of Mr. Virts' unawareness of the danger behind him. She states that the jury concluded that this conduct pertained only to contributory negligence, and not to the doctrine of last clear chance. Aff. of Maureen Kenney, Nov. 1, 1990, attached to Pl.'s Mot. for a New Trial (J.A. at 195-196).
 
 
 46
 The trial judge denied the motion for a new trial, ruling that Ms. Kenney's affidavit was an improper attempt to impeach a jury verdict. Barsh v. Chrysler Corp., 203 S.E.2d 107 (S.C. 1974). We stand in full agreement with the trial court on this matter. We will not encourage the process of such juror polling by considering its results. Such conduct undermines the vital role the jury system plays in our judicial framework. Verdicts tested in the secret crucible of jury deliberations should have some semblance of finality.
 
 
 47
 Finally, even if we found error in the instruction, we could not upset the jury verdict in this case. Based on the evidence before the jury, we cannot conclude that it exercised unreasonable presumptions when rendering its verdict. We cannot disturb a jury verdict unless the version is "against the clear weight of the evidence, or is based upon evidence which is false, or will result in a miscarriage of justice." Mattison v. Dallas Carrier Corp., 947 F.2d 95, 107 (4th Cir. 1991) (citations omitted) (quoting Aetna Casualty & Sur. Co. v. Yeatts, 122 F.2d 350, 352 (4th Cir. 1941)).
 
 
 48
 The doctrine of last clear chance applies only where a defendant acts negligently and the plaintiff is contributorily negligent.[6] South Carolina courts make clear that: the doctrine of last clear chance is not applicable in every case where the defendant alleges the plaintiff was guilty of contributory negligence. The doctrine applies only where the plaintiff's antecedent negligence has become remote in the chain of causation and is but a mere condition of the plaintiff's injury ... It does not apply where the plaintiff's act combines and concurs with the defendant's act as a proximate cause of the injury ... Before the doctrine can be applied, the plaintiff's negligence must have ceased to operate as a proximate cause of the injury while there was still time for the defendant's negligence to intervene.
 
 
 49
 Johnston v. Ward, 344 S.E.2d 166 (S.C. App. 1986) (citations omitted).
 
 
 50
 Thus, the doctrine of last clear chance involves"primary or initial negligence; it has to do with the defendant's conduct after the peril of the [victim] was recognized, or should have been recognized by the defendant." Horne v. Seaboard Coast Line R.R. Co., 301 F. Supp. 561, 563 (D.S.C. 1969) (emphasis in original). In fact, South Carolina courts consider the doctrines of contributory negligence and last clear chance mutually exclusive. Smith v. Blackwell, 156 S.E.2d 867, 870 (S.C. 1967); Jones v. Cannerella, 375 S.E.2d 352, 354 (S.C. App. 1988). The doctrine of last clear chance is unavailable wholly when the injured party is guilty of contributory negligence as a matter of law. Hopkins v. Reynolds, 135 S.E.2d 75, 77 (S.C. 1964).
 
 
 51
 In this appeal, appellant's arguments turn on the jury's interpretation of the facts as applied to the law. Testimony conflicted, and the jury decided. That reason alone commends leaving undisturbed the jury's finding. A closer examination of the evidence further supports this course of action.
 
 
 52
 No party contested Mr. Virts' negligence. Appellant asserts that because he was unaware of the danger of the approaching truck, he could not extricate himself from the situation at hand. Appellees, however, aver that Mr. Virts' negligence combined and concurred with any negligence on the part of Mr. Bailey.
 
 
 53
 The evidence of Mr. Virts' contributory negligence reasonably could lead a jury to decide that such behavior "combined and concurred" with the defendant's actions. First, Mr. Metts and Ms. Bolin observed Mr. Virts pull out in front of Mr. Bailey's truck. Second, Mr. Virts used no turn signal. Third, evidence suggested that Mr. Virts was not passing, but instead rode alongside Mrs. Virts, talking to her and having his picture taken. Fourth, if Mr. Virts did not know Mr. Bailey's truck was approaching, it means he simply failed to exercise due care by looking in his rear view mirror for oncoming vehicles.
 
 
 54
 Finally, a reasonable jury might conclude that Mr. Bailey did not discover the danger to Mr. Virts in time to avoid the accident. The evidence reasonably could lead a jury to decide that Mr. Bailey did not realize that Mr. Virts was merely joyriding alongside his fiancee, rather than passing her car. If the jury did so find, appellant has not established a requisite element of proof within the doctrine of last clear chance. Suber v. Smith, 134 S.E.2d 404 (S.C. 1964); Jones v.
 
 
 55
 5905 35 2 Cannerella, 375 S.E.2d 352, 354 (S.C. App. 1988).
 
 V.
 
 56
 For the reasons stated above, the judgment of the district court is affirmed.
 
 AFFIRMED
 
 
 [1]
 Under South Carolina Public Service Commission certification requirements, persons hauling materials for hire must obtain permission to do so from the State. See generally S.C. Code Ann.s 58-23-10 et seq. (Law. Coop. 1976 & Supp. 1990). An applicant must show proof of insurance in order to obtain certification. S.C. Code Ann.s 58-23-910. Under this statutory scheme, an injured party may sue the insurer directly as a beneficiary of the insurance policy. Watts v. Baker, 105 S.E.2d 605 (S.C. 1958)
 
 
 [2]
 The relevant testimony follows:
 Q:How long had you been hauling materials with that truck under your Public Service certificate which you received?
 Answer by Mr. Craven: The Public Service tag goes into effect in June, and I put a service tag on it, a Public Service tag on it, in June.
 Q:Do you recall the month the wreck was in?
 A:April.
 Q:And you would have been granted a Public Service Certificate prior to that?
 A:In June.
 Q:The June prior to that?
 A:No. I don't believe, no.
 Q:What's a Class E certificate, public convenience and necessity?
 A:It would be M or E.
 Q:E?
 A:Class E for limited.
 Q:Do you recall having a certificate have been granted prior to this wreck?
 A:You mean prior to the June previous to this wreck?
 Q:The June in April of 1987, do you recall having a Class E certificate granted to you?
 A:Yes. I had one in my possession.
 Q:And it was prior to this wreck?
 A:Yes. It was in June.
 Q:Of the previous year?
 A:Absolutely.
 Q:You didn't change or request any different certificate between the June of 19-
 A:No.
 Q:- the previous June and the date of this wreck?
 A:No.
 Q:My question was, how long had you been hauling under that certificate?
 A:Since June.
 Testimony of Mr. Lewis Craven (J.A. at 82-83).
 
 
 [3]
 The transcript of the court's denial reads as follows:
 Q:Based upon your investigations and your calculations which you made, do you have an opinion, within a reasonable degree of engineering certainty, while applying the principles which you have told us about are normally used in the accident reconstruction trade, as to who caused this wreck to occur?
 Mr. Hood (for the defendant): If the Court please.
 The Court: Wait a minute. I sustain an objection to that.
 Q (by Mr. Middleton, for the plaintiff): Do you have an opinion, within a reasonable degree of engineering certainty, as to who had the best opportunity to avoid ...
 The Court: I sustain the objection to that.
 Testimony of Dr. Wattleworth (J.A. at 153).
 
 
 [4]
 In his brief, appellant claims that the trial judge sua sponte sustained an objection that was not made. In order to argue this, however, appellant excises from the transcript Mr. Hood's comment,"Your Honor, if you please...." Appellant's Br. at 25. The full record indicates that the Court treated Mr. Hood's statement as an objection, and merely sustained it a second time without prompting by Mr. Hood. See n.3, supra
 
 
 [5]
 The district court permitted the following exchange:
 Dr. Wattleworth: Yes, sir. Basically all of the testimony from all of the parties here, it would indicate that Mr. Bailey had ample time to have seen Mr. Virts in the left-hand lane, to recognize that he was overtaking Mr. Virts, and to apply his brakes and slow down....
 There is only a 10 mile an hour speed differential there. It would take him a very short distance to brake or bring his speed down to 45 miles an hour, at that point he would no longer be closing in on Mr. Virts.
 ...
 Mr. Middleton (for the plaintiff): Is there any way, Dr. Wattleworth, based upon the facts that have come in in this case, and the relative speeds of the two vehicles and the perception time that
 Mr. Bailey testified that he had five seconds, that had he braked when he has testified that he braked, that he could have hit Mr. Virts's motorcycle?
 Dr. Wattleworth: No. No, he could not have braked before impact.
 If he had applied his brake when he was more than seven feet from the back of the Virts' vehicle, he could have avoided -he could have slowed down to 45 miles an hour without hitting
 Mr. Virts.
 Testimony of Dr. Wattleworth (J.A. at 139, 152).
 
 
 [6]
 One court has distilled four separate considerations under the last clear chance doctrine:
 (1) That [a plaintiff] negligently placed himself in a position of peril from which he could not escape by the exercise of reasonable care;
 (2) that the [defendant] knew, or by the exercise of reasonable care could have discovered, the [plaintiff's] perilous position and his incapacity to escape from it before the endangered[plaintiff] suffered injury at his hands;
 (3) that the [defendant] had the time and means to avoid injury to the endangered [plaintiff] by the exercise of reasonable care after he discovered, or should have discovered, the [plaintiff's] perilous position and his incapacity to escape from it; and
 (4) that the [defendant] negligently failed to use the available time and means to avoid injury to the endangered [plaintiff], and for that reason struck and injured him.
 Broom v. Southeastern Highway Contracting Co., 352 S.E.2d 302, 307 (S.C. App. 1986).