WALTER BREEDING, appellant, v. FRED REED, SR., et al., doing business as REED PRODUCE AND FEED COMPANY AND REED BROTHERS, INC., appellees and cross-appellants.

No. 50285.

130

SEPTEMBER 19, 1961.

REHEARING DENIED NOVEMBER 14, 1961.

Duffield & Pinegar, of Des Moines, and Gordon K. Darling, of Winterset, for appellant.

Webster, Frederick & Jordan, of Winterset, for appellees and cross-appellants.

OLIVER, J.—Action for damages for personal injuries suffered in a fall from the running board of defendants' truck. Trial to a jury resulted in verdict and judgment for plaintiff for $5000. Defendants moved for judgment notwithstanding

verdict or for new trial. The motion for new trial was sustained on one ground only, viz.: errors connected with the direct examination of a witness, Dennis Oakes. From that part of the order plaintiff appeals. Defendants cross-appeal from the overruling of their motion for judgment notwithstanding verdict.

Defendants Fred Reed, Jr., and Harry F. Reed operated a feed and grain business under the name of Reed Produce and Feed Company. The other named defendants had no connection with this case and it was dismissed as to them. October 3, 1957, defendants Fred Reed, Jr., and Harry F. Reed sent their 1947 model one-fourth-ton truck to plaintiff's farm, a few miles distant, for soybeans they had bought from him and the tenant on his farm. Defendants' employee, Dennis Oakes, operated the truck. With him was another employee, Robert Phillips. They drove to plaintiff's farmhouse to get plaintiff. He sat in the cab of the truck on the right side and directed the driver to the soybeans, which were in wagons in a near-by field. En route thereto were gates which plaintiff opened for the truck and closed after it. The right door of the truck had a defective lock and was wired shut. Hence, the driver was required to step out of the left door of the cab of the truck before plaintiff could do so and to again step out to enable plaintiff to return to his seat.

Upon reaching the wagons which contained the beans, they found they had no tarpaulin to spread on the ground to prevent wasting beans in transferring them to defendants' truck by means of an auger. Robert Phillips testified for defendants that they used a tarpaulin "a lot of the time" and "I suppose we had forgotten it on the day of the injury"; that plaintiff said they should have a tarp and Phillips said, "If you have got one go and get it."

Oakes, accompanied by plaintiff, drove the truck back to plaintiff's house where both again went out through the left door of the truck and plaintiff secured a tarpaulin. In the meantime Oakes reentered the cab of the truck, closed the left door and turned the truck around. He testified he supposed he closed the door so it would latch. Plaintiff did not reenter the truck. He threw the tarpaulin through the open window of

the left door into the seat he had occupied on the right side of Oakes.

Plaintiff testified he then stepped upon the left running board of the truck and stood there facing the driver with one arm over the inside of the left door, the window of which was down; with the other hand he had hold of the front part of the door; his body was up against the door; one hand was inside the door. He did not touch any handle on the door; nothing was said to him; he said, "go ahead" and Oakes started the truck. Plaintiff did not at any time operate the door handle. When the truck had traveled approximately one hundred yards on the crushed rock road, the door came open and swung open and plaintiff was thrown to the road. He suffered a broken collarbone and other injuries. The truck was not going fast. Its speed was about 15 or 20 miles per hour. Oakes testified that, as far as he knew, no one was operating the handle of the door when it came open. He testified also that he knew the door might open. Robert Phillips testified concerning his past experience with the left door of the truck, "If it wasn't shut tight, you know, slammed tight, it would come open."

Plaintiff's petition was in two counts, each of which alleged plaintiff was injured when the left door of the truck came open, causing him to fall, etc. Count I alleged defendants did not exercise due care and were negligent in the use and management of the truck under their exclusive care and control and stated plaintiff relied upon the doctrine of res ipsa loquitur. Count II pleaded the left door was defective in that it would not remain latched when closed and latched, and would and did come open without the door handle being operated, and that defendants, having knowledge thereof, were negligent in failing to warn plaintiff. Defendants' motion for directed verdict was sustained as to Count II.

I. The accident happened in October 1957. The trial was in December 1959. In September 1959, one of counsel for plaintiff had interviewed Oakes about the accident and the questions and answers had been recorded with a dictaphone and transcribed. In that interview the first reference to the condition of the left door of the truck was volunteered by Oakes.

"Q. Now the door on the *right*—you were having trouble with it? A. We were having trouble with *both* doors. [Italics supplied.] Q. What was the trouble you were having? A. They wouldn't stay shut. Q. And how long had that condition existed, all the time that you had the truck, that you had driven, I mean? A. I believe so."

In this interview there were other statements by Oakes which tended to support plaintiff's contentions concerning the accident.

Plaintiff called Oakes as a witness. Shortly after his direct examination started it appeared his testimony was in conflict with his statements in the interview. Counsel for plaintiff then began to question him about some of those statements. Defendants objected at length, mainly on the ground such questions were attempts by plaintiff to impeach his own witness.

■ Counsel for plaintiff stated for the record, that they were surprised when the witness changed his story. Their position is thus stated in Spaulding v. Chicago, St. P. & K. C. Ry. Co., 98 Iowa 205, 210, 67 N.W. 227, 229: "* * * a party surprised by the testimony of a [his] witness may call his attention to conflicting statements made at another time, not for the purpose of laying the foundation for impeachment, but to test and quicken his recollection, and give him an opportunity to correct his testimony [if it is erroneous], and to show that it has surprised the party who called him."

This is the rule in this state and in most other jurisdictions. State v. Billberg, 229 Iowa 1208, 296 N.W. 396; State v. Neville, 228 Iowa 1225, 293 N.W. 560; Doran v. Waterloo, Cedar Falls & Northern Ry. Co., 170 Iowa 614, 153 N.W. 225; 58 Am. Jur., Witnesses, sections 798 to 804; Annotation in 74 A. L. R. 1042 to 1070; 98 C. J. S., Witnesses, section 578; Ann. Cas. 1914B, 1125, 1126. Hence, defendants' objections to the questions were properly overruled.

■ II. Counsel for plaintiff had placed in the courtroom a dictaphone, ready for operation. They advised the court, in chambers, that if Oakes denied having made the contrary statements shown in the recorded interview, of which they had a transcript, they would use the dictaphone recording to help

refresh his recollection. The witness on the witness stand would hear the recording through earphones. The jury would not hear it. This was the procedure followed in United States v. McKeever, 2d Cir., 271 F.2d 669, 675, 676. See annotation in 58 A. L. R.2d 1024 et seq., Sound Recordings in Evidence.

The trial court did not permit the use of the dictaphone in the courtroom. However, the procedure adopted was not erroneous. The recorded interview was played in chambers to the witness, counsel and court only, after which they returned to the courtroom and the direct examination of the witness proceeded.

 III. Oakes was asked about several statements made by him in the recorded interview. He admitted having made the statements but testified they were incorrect, that he had been mistaken, was confused, had not thought about it for two years. Most of the questions asked him met with objections, there were a number of discussions in the courtroom and several recesses for discussions in chambers. Consequently his examination proceeded slowly.

The part of the order which granted defendants a new trial was based upon the conclusion that errors had been committed in connection with the direct examination of this witness. The court stated it felt it was in error in permitting any examination whatever in regard to the former statement after the witness said he remembered what he said and after thinking it over he was mistaken about his former statement.

 We do not agree the court was in error in permitting the examination to continue. The transcript of the dictaphone interview shows a number of Oakes' statements with which his testimony did not agree. Although a trial court has a judicial discretion in determining the extent of such examination, it is proper that the various inconsistent statements be called to the attention of the witness for the purposes recognized by the rule. State v. Duffy, 134 Ohio St. 16, 15 N.E.2d 535, 538, 539; Annotation in 74 A. L. R. 1062.

 IV. The order of the trial court states the lengthy examination of the witness was prejudicial to the defendants because it must have led the jury to believe the witness had

**136**

made a misstatement and that it was an impeachment which affected his credibility. As already suggested, the record of this examination contains much more than the questions and answers. Its length is due largely to repeated objections to questions and discussions connected therewith. The court cautioned and also properly instructed the jury that the only purpose of the interrogation about the prior statements was to refresh the recollection and quicken the conscience of the witness. State v. Duffy, supra. In view of their purpose such examinations should not be unduly curtailed.

The text in 98 C. J. S., Witnesses, section 578b, page 539, states: "* * * it is held to be no objection that the incidental effect of such examination of one's own witness is to impeach him." An annotation in 117 A. L. R. 326, 328, states: "Where a party is taken by surprise by the evidence of his witness, the former may be permitted to refresh the witness's memory, and induce him to correct his testimony, although it tends to discredit the witness." This rule is recognized in various decisions listed in an annotation in 74 A. L. R. 1042, at 1052, et seq. See also State v. Duffy, supra; Moore v. State, 147 Neb. 390, 23 N.W.2d 552, 554, and citations; Arnold v. State, 5 Wyo. 439, 40 P. 967.

We find no reversible error connected with plaintiff's examination of the witness Oakes. Hence, the order granting defendants a new trial on that ground was erroneous.

V. Defendants' motion for directed verdict was sustained as to Count II of the petition. It was overruled as to Count I which alleges general negligence only and is based upon res ipsa loquitur. After the verdict against them, defendants moved for judgment notwithstanding verdict. They appeal from the order overruling that motion. One of defendants' contentions is that the doctrine of res ipsa loquitur is not applicable.

Under this doctrine where (1) injury is caused by an instrumentality under the exclusive control of defendant and (2) the occurrence is such as in the ordinary course of things would not happen if reasonable care had been used, the happening of the injury permits, but does not compel, an inference defendant was negligent. Thompson v. Burke Engineering Sales

Co., 252 Iowa 146, 106 N.W.2d 351; Eaves v. Ottumwa, 240 Iowa 956, 969, 38 N.W.2d 761, 769, 11 A. L. R.2d 1164, 1176, and citations; Schneider v. Keokuk Gas Service Co., 250 Iowa 37, 41, 92 N.W.2d 439, 441; Article by Harry G. Slife in 35 Iowa Law Review 393.

VI. Defendants assert the left door of the truck was the instrumentality which caused the injury and that it was not in their exclusive control at the time of such injury. The rule now recognized in various jurisdictions is that the real test of control in res ipsa loquitur cases is whether defendants were in control at the time of the negligent act or omission which, either at that time, or later, produced the accident. Thompson v. Burke Engineering Sales Co., 252 Iowa 146, 106 N.W.2d 351, supra; Weidert v. Monahan Post Legionnaire Club, 243 Iowa 643, 649, 51 N.W.2d 400, 403. The Weidert case quotes with approval: "Control 'is not necessarily a control exercised at the time of the injury, but may be one exercised at the time of the negligent act which subsequently resulted in an injury.' "

The verdict of the jury necessarily was based upon its finding defendants' negligence was the proximate cause of the accident. The cause found must have been that the door was defective or that it had not been properly closed by Oakes. After plaintiff stepped upon the running board and Oakes started the truck, only a few seconds elapsed before the door came open. The jury would have been clearly warranted in finding that in this brief period there could have been no change in the condition of the door which reasonably could have caused it to come open, under the circumstances shown in the record. On the other hand, Oakes testified he thought he closed the door so it would latch. If he failed to do so and such failure was the proximate cause of the subsequent accident, his control, for his employer, at such subsequent time was not essential to make the doctrine of res ipsa loquitur applicable.

VII. The other foundation fact for res ipsa loquitur is that the occurrence be such as, in the ordinary course of things, would not have happened if reasonable care had been used. This requirement rests on common experience, and not

on evidence in the particular case that tends to show the occur- rence was or was not the result of negligence. In considering such requirement this court stated in Peterson v. De Luxe Cab Co., 225 Iowa 809, 812, 281 N.W. 737, 738:

"* * * The accident was such as in the ordinary course of things does not happen. In this modern day, with automobiles and taxicabs so common, the opening of a car door does not happen unless there is some reason for it. In everyday use young children will lean against car doors and there is no thought in the minds of their watchful parents that there is any danger of the door opening. Automobile doors are so fastened that it is the extraordinary thing when one opens without some apparent reason."

This language is applicable to the facts shown in the case at bar.

 We hold the evidence was sufficient to require submission of the case to the jury under the doctrine of res ipsa loquitur.

 VIII. It is contended plaintiff failed to establish his freedom from contributory negligence in riding upon the running board of the truck. That was a question of fact which the jury determined contrary to defendants' contentions. See Hebert v. Allen, 241 Iowa 684, 41 N.W.2d 240; 5A Am. Jur., Automobiles and Highway Traffic, section 804.

IX. Other propositions presented by defendants have been considered and have been found not to entitle them to judgment or to a new trial. The effect of our decision is to reinstate the judgment. This makes it unnecessary that we consider the error assigned by plaintiff to the order sustaining defendants' motion to withdraw from the consideration of the jury Count II of plaintiff's petition which was based upon specific allegations of negligence.

The order of the trial court is Reversed on plaintiff's appeal and Affirmed on defendants' cross-appeal.

All JUSTICES concur.