James F. CLINKSCALES,
Jr., Appellant,

v.

NELSON SECURITIES, INC. d/b/a The
Gallery Lounge, Caroline S. Nelson
and Jack D. Nelson, Appellees.

No. 03–0901.

Supreme Court of Iowa.

June 10, 2005.

Justin A. Teitle of Teitle Law Offices, Davenport, for appellant.

Mark A. Woollums and Carrie N. Roseberry of Betty, Neuman & McMahon, L.L.P., Davenport, for appellees.

PER CURIAM.

"Danger invites rescue." [1] A marine out for a drink at a Davenport bar rushed to the scene of a gas leak at a grill on the premises. While attempting to turn off two propane gas tanks, a grease fire reignited and he was badly burned. The district court dismissed the marine's negligence claim against the bar. The court held as a matter of law the marine was solely to blame for his injuries. The court of appeals affirmed. Because a jury could find the bar's negligence proximately caused the marine's rescue attempt and injuries, we reverse the district court, vacate the court of appeals, and remand for a trial on the merits.

## I. Facts

Late one Friday afternoon in the summer of 2002, James Clinkscales went to The Gallery Lounge, a Davenport pub.

Approximately fifty people were there. Clinkscales, an active-duty marine in town as a recruiter, stationed himself at the bar next to a blonde woman known only as "Dimples." The two began to share a pitcher of beer together.

On Fridays in the summer, The Gallery regularly grilled hamburgers outside and served them to its customers. The grill stood directly outside of the bar on a patio ten feet away from where Clinkscales and Dimples sat. Two tanks of propane gas placed underneath the grill fueled it. The grill was custom-made and large enough to grill twenty burgers at a time.

The Gallery employed Joe Moser to grill the burgers. The first batch of burgers Moser placed on the grill that evening were particularly greasy. When Moser flipped them over, a fire flared up on the grill. Moser did not consider this to be a problem. All of a sudden, however, Moser heard something abnormal—"a pop and a hiss." A ball of fire erupted underneath the grill and engulfed the propane tanks.

Caroline Nelson co-owns The Gallery with her husband and regularly works there. When the fire started Nelson was standing at the patio door. Moser told Nelson to get a fire extinguisher. Nelson and Moser testified Nelson and other Gallery employees made general announcements to the patrons to leave and then one employee called the fire department. Clinkscales testified he was alerted to the fire when he saw Nelson come into the bar looking for a fire extinguisher, but did not believe Nelson said anything to him or anybody else about what was happening.

Nelson came back outside with a fire extinguisher and gave it to a patron. The patron extinguished the flame, and Moser managed to turn the knobs on the grill to

1. *Wagner v. Int'l Ry.*, 232 N.Y. 176, 133 N.E. 437, 437 (1921) (Cardozo, J.).

the "off" position. Moser could still smell gas escaping from the tanks, however, and Moser said aloud that he wanted to shut the tanks off. Moser pulled the grill away from a wall to access the tanks, but he found the valves were too hot to touch. There were customers in the patio and adjacent bar. Clinkscales came out to the patio and asked a man holding a fire extinguisher if anyone had turned the gas off. The man told Clinkscales the handle was too hot.

Clinkscales, who had received extensive training in fire suppression in the military, recognized the situation was "very dangerous." Clinkscales took off his shirt, wrapped it around one of hands, and turned the gas off. No one asked Clinkscales to do so. He reacted instinctively:

> [I]t's like running after a kid when he runs into the street, you don't think about it, that there's a car coming, you just try to grab the child, and, you know, hope for the best. You could get killed doing it, but you just do it.

As Clinkscales was turning off the gas, the fire flared up. Clinkscales was burned on his face, neck, chest, arms, and legs.

Skin hanging from his arms, Clinkscales continued his rescue efforts by helping a frightened young woman in the patio over a fence. A frequent patron of the bar, a man named Norm, took Clinkscales to the hospital just as the fire department arrived.

## II. Prior Proceedings

Clinkscales sued The Gallery for negligence. He claimed The Gallery owed him a duty of care as a business invitee. Clinkscales alleged The Gallery was specifically negligent because it (1) failed to properly design, manufacture, maintain, and operate the grill; (2) did not adequately train its employees in the use and maintenance of the grill; (3) did not have enough fire-suppression equipment and did not properly use the fire extinguishers it did have; and (4) did not have emergency procedures in place necessary to protect its customers. In the alternative, Clinkscales also pled res ipsa loquitur to show general negligence. Clinkscales contended that even if he could not prove the precise cause of the mishap, the defendants had exclusive control over the instrumentalities involved in the fire.[2]

The defendants filed a motion for summary judgment, which the district court granted. As a matter of law the district court found employees of The Gallery told Clinkscales to evacuate the premises; there was no evidence there was imminent risk to life when he turned off the gas; and "a reasonable person would not determine that the benefits of approaching a fire outweigh the risk of being seriously burned or injured." The district court ruled the defendants were not liable because (1) Clinkscales's injuries were caused by a known and obvious danger and (2) the defendants' alleged negligence was not the proximate cause of Clinkscales's injuries. The court also concluded res ipsa loquitur was not applicable because grease fires can occur without negligence. The court of appeals affirmed. It declined to apply the rescue doctrine and held, as a matter of law, Clinkscales "suffers from a self-inflicted wound."

## III. Principles of Review

██ Appellate review of a grant of a summary-judgment motion is for the cor-

**2.** Clinkscales sued Caroline and Jack Nelson personally for negligence because they owned the land on which The Gallery operated through a lease. Clinkscales gave the same reasons in support of his claim against The Gallery but also alleged the Nelsons did not properly inspect their land for dangerous conditions. The Nelsons do not distinguish the claims brought against the corporation and themselves personally.

rection of errors at law. *Estate of Harris v. Papa John's Pizza,* 679 N.W.2d 673, 677 (Iowa 2004). Summary judgment is proper only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Iowa R. Civ. P. 1.981(3). The party seeking summary judgment bears the burden of proof. *Harris,* 679 N.W.2d at 677. A court entertaining a motion for summary judgment must view the evidence in the light most favorable to the nonmoving party. *Id.*

■ Even if the facts are undisputed, summary judgment is not proper if reasonable minds could draw different inferences from them and thereby reach different conclusions. *Walker Shoe Store, Inc. v. Howard's Hobby Shop,* 327 N.W.2d 725, 728 (Iowa 1982). The party resisting the motion for summary judgment should be afforded every legitimate inference that can reasonably be deduced from the evidence. *Cent. Nat'l. Ins. Co. v. Ins. Co. of N. Am.,* 522 N.W.2d 39, 42 (Iowa 1994).

■ Two principles are especially important to our resolution of this appeal. First, we reiterate the well-settled maxim that questions of negligence or proximate cause are ordinarily for the jury—only in exceptional cases should they be decided as a matter of law. Iowa R.App. P. 6.14(6)(*j* ); *McCaull v. Universal Mfg. Co.,* 218 N.W.2d 592, 593 (Iowa 1974); *Regan v. Denbar, Inc.,* 514 N.W.2d 751, 752 (Iowa Ct.App.1994). Second, a court deciding a motion for summary judgment must not weigh the evidence, but rather simply inquire whether a reasonable jury faced with the evidence presented could return a verdict for the nonmoving party. *Bitner v. Ottumwa Cmty. Sch. Dist.,* 549 N.W.2d 295, 300 (Iowa 1996). Mere skepticism of

a plaintiff's claim is not a sufficient reason to prevent a jury from hearing the merits of a case.

## IV. The Merits

### A. The Rescue Doctrine

■ The rescue doctrine was forged at common law. It involves heroic people doing heroic things. The late Justice Cardozo aptly summarized the commonsense observations about human nature that led to the doctrine's widespread recognition across this nation when he wrote:

> Danger invites rescue. The cry of distress is the summons to relief. The law does not ignore these reactions of the mind in tracing conduct to its consequences. It recognizes them as normal. It places their effects within the range of the natural and probable. The wrong that imperils life is a wrong to the imperiled victim; it is a wrong also to his rescuer. The state that leaves an opening in a bridge is liable to the child that falls into the stream, but liable also to the parent who plunges to its aid. The railroad company whose train approaches without signal is a wrongdoer toward the traveler surprised between the rails, but a wrongdoer also to the bystander who drags him from the path. . . . The risk of rescue, if only it be not wanton, is born of the occasion. The emergency begets the man. The wrongdoer may not have foreseen the coming of a deliverer. He is accountable as if he had.

*Wagner v. Int'l Ry.,* 232 N.Y. 176, 133 N.E. 437, 437–38 (1921) (citations omitted). That is, those who negligently imperil life or property may not only be liable to their victims, but also to the rescuers. *See generally* Joel E. Smith, Annotation, *Liability of One Negligently Causing Fire for Injuries Sustained by Person Other Than*

*Firefighter in Attempt to Control Fire or to Save Life or Property*, 91 A.L.R.3d 1202 (1979).

We have consistently and liberally applied the rescue doctrine in this state for over one hundred years. *See, e.g., Hollingsworth v. Schminkey*, 553 N.W.2d 591 (Iowa 1996); *Leaders v. Dreher*, 169 N.W.2d 570 (Iowa 1969); *Knudsen v. Merle Hay Plaza, Inc.*, 160 N.W.2d 279 (Iowa 1968); *Henneman v. McCalla*, 260 Iowa 60, 148 N.W.2d 447 (1967); *Klunenberg v. Rottinghaus*, 256 Iowa 731, 129 N.W.2d 68 (1964); *Clayton v. Blair*, 255 Iowa 700, 123 N.W.2d 896 (1963); *Clayton v. Blair*, 254 Iowa 372, 117 N.W.2d 879 (1962); *Johannsen v. Mid–Continent Petroleum Corp.*, 232 Iowa 805, 5 N.W.2d 20 (1942); *Glanz v. Chi., Milwaukee & St. Paul Ry.*, 119 Iowa 611, 93 N.W. 575 (1903); *Liming v. Ill. Cent. R.R.*, 81 Iowa 246, 47 N.W. 66 (1890). *But see Saylor v. Parsons*, 122 Iowa 679, 98 N.W. 500 (1904).[3] Historically the doctrine arose in questions of proximate cause and contributory negligence. *Clayton*, 254 Iowa at 375–76, 117 N.W.2d at 880–81. "In other words, did the act of the injured [rescuer] so intervene as to break the chain of causation from [the] defendant's negligence, or constitute such contributory negligence as to bar recovery?" *Id.* at 376, 117 N.W.2d at 881. The general rule was a rescuer would not be deemed to have broken the chain of causation or charged with contributory negligence for reasonable attempts to save the life or property of another. *See Henneman*, 260 Iowa at 72–73, 148 N.W.2d at 454–55. Since the advent of comparative negligence, the doctrine has only arisen on appeal in questions of proximate cause, i.e., when, as here, the defendant claims the rescuer's actions were a superseding cause of the rescuer's injuries. *See, e.g., Hollingsworth*, 553 N.W.2d at 598 (holding rescuer's actions not a superseding cause).[4]

## B. Proximate Cause

■ The Gallery contends its alleged negligence was not the proximate cause of Clinkscales's injuries. The Gallery asserts the facts show its employees ordered patrons to leave the premises, it had called the fire department, and at the time of the rescue attempt Moser was retrieving a rag to turn off the propane valves. The court of appeals held as a matter of law that the rescue doctrine did not apply in this case because "no one was in any danger until the plaintiff placed himself there."

3. In *Saylor*, we apparently held the rescue doctrine did not apply when the rescuer was injured saving a person who had negligently imperiled himself. Courts and commentators alike have roundly criticized this decision. *See* W.C. Crais III, Annotation, *Rescue Doctrine: Negligence and Contributory Negligence in Suit by Rescuer Against Rescued Person*, 4 A.L.R.3d 558, 559–60 (1965) (stating all subsequent courts, commentators, and the authors of the Restatement have chosen not to follow *Saylor*, which is "the only authority" barring recovery in so-called first-party rescue cases; noting also that "it does not seem likely that future courts will see fit to revive its teachings"); *see also Sears v. Morrison*, 76 Cal.App.4th 577, 90 Cal.Rptr.2d 528, 531–34 (1999) (severely criticizing *Saylor*; noting court could find "no case following *Saylor*"); *Britt v. Mangum*, 261 N.C. 250, 134 S.E.2d 235, 237 (1964) (*Saylor* "has not met with favor in other jurisdictions, but instead, when it has been pressed, it has been almost invariably rejected."); Restatement (Second) of Torts § 445 cmt. *d* (1965) (rejecting *Saylor* analysis). It appears we overruled *Saylor sub silentio* in *Hollingsworth*. 553 N.W.2d at 598.

4. Whether the risks of rescue are counted against the rescuer under the comparative-fault doctrine in Iowa is unsettled and not at issue in this appeal. *See generally* Jeffrey F. Ghent, Annotation, *Rescue Doctrine: Applicability and Application of Comparative Negligence Principles*, 75 A.L.R.4th 875 (1990).

It is well settled that questions of proximate cause are, absent extraordinary circumstances, for the jury to decide. Iowa R.App. P. 6.14(6)(*j*); *see, e.g., Hollingsworth,* 553 N.W.2d at 597. The line between what is sufficiently proximate and what is too remote is a thin one:

"If upon looking back from the injury, the connection between the negligence and the injury appears unnatural, unreasonable, and improbable in the light of common experience, such negligence would be a remote rather than a proximate cause. If, however, by a fair consideration of the facts based upon common human experience and logic, there is nothing particularly unnatural or unreasonable in connecting the injury with the negligence, a jury question would be created."

*Hollingsworth,* 553 N.W.2d at 597 (quoting *Henneman,* 260 Iowa at 67, 148 N.W.2d at 451). Here we are concerned with Clinkscales's rescue attempt, which The Gallery characterizes as a "superseding cause" of his injuries. A superseding cause is an intervening force that "prevent[s] the defendant from being liable for harm to the plaintiff that the defendant's antecedent negligence is a substantial factor in bringing about." *Id.* (citing Restatement (Second) of Torts § 440 (1965) [hereinafter Restatement] ).

When a rescue attempt is involved, matters are particularly thorny and a court should be especially wary to grant a defendant's motion for summary judgment. *See id.* at 598. The rescue doctrine recognizes not all intervening forces are superseding causes:

If the actor's negligent conduct threatens harm to another's person, land, or chattels, the normal efforts of the other or a third person to avert the threatened harm are not a superseding cause of harm resulting from such efforts.

Restatement § 445 (quoted in *Hollingsworth,* 553 N.W.2d at 598). That is, so long as the rescuer's response is "normal," the negligent actor will not escape liability for the rescuer's injuries.

What are "normal" rescue efforts? Although in *Hollingsworth* we loosely characterized the question of "normal efforts" as one solely of foreseeability, *see* 553 N.W.2d at 598, in truth the term "normal" is *not* used "in the sense of what is usual, customary, foreseeable, or to be expected." Restatement § 443 cmt. *b; see also id.* § 445 cmt. *b.* Rather, "normal" (referred to in our pre-Restatement cases as "natural") is used as "the antithesis of abnormal, of extraordinary." Restatement § 443 cmt. *b.*

"[T]he only inquiry should be whether the conduct of the plaintiff was 'natural' under the circumstances, which is to be ascertained by a counter-chronological examination of the facts. Here the term 'natural' must be taken to embrace those qualities of human nature leading to risk-taking in an effort to preserve property, to rescue other persons, or to save oneself. It necessarily includes actions which these well recognized and familiar human feelings bring about. Thus 'natural' conduct includes not only cool and well-reasoned action but also the frantic, excited and apparently illogical movements which are too commonly exhibited by a large percentage of human beings in moments of stress."

"In these situations, the defendant may negligently have exposed the person or property of another to unreasonable risk of loss or destruction. 'Natural' instincts will move some persons to make efforts at rescue. The movements of the rescuer may not be well judged and may result in harm either to the goods, to the person endangered by the defendant, or to the rescuer himself. In any

such case the defendant will be held liable, for the 'natural' conduct of the rescuer leaves no break or gap in the chain of causation." *Clayton*, 254 Iowa at 377–78, 117 N.W.2d at 882 (quoting Clarence M. Updegraff, *A Technique for Determining Legal Liability Based On Negligence*, 27 Iowa L.Rev. 2, 28 (1941)); *accord* Restatement § 443 cmt. *b*. What constitutes normal or natural conduct depends upon the circumstances and "is in most cases a question to be decided by the jury." *Henneman*, 260 Iowa at 73, 148 N.W.2d at 455; *accord Liming*, 81 Iowa at 254, 47 N.W. at 68. If the jury determines the rescuer's actions are a normal or natural result of the defendant's actions, the defendant's actions were a proximate cause of the rescuer's injuries.

We think the facts are sufficiently in conflict on the issue of proximate cause to warrant a jury determination. The dangers of fire and gas leaks are well known to all. *See Johannsen*, 232 Iowa at 807, 5 N.W.2d at 22 (upholding jury instruction on rescue doctrine when plaintiff rushed onto defendant's property to stop unattended gas leak; as plaintiff shut off valve, leak burst into flames severely injuring plaintiff); *see also Von Tersch v. Ahrendsen*, 251 Iowa 115, 120, 99 N.W.2d 287, 290 (1959) ("The danger of fire is well-known to all."). There is evidence the danger was imminent in this case, or at least apparently so. *See Henneman*, 260 Iowa at 72, 148 N.W.2d at 454 (rescue doctrine applies not only when danger is imminent, but also when "the conduct of the rescuer is that of an ordinarily prudent person under existing circumstances"); *accord Silbernagel v. Voss*, 265 F.2d 390, 391–92 (7th Cir.1959) (approving of jury instruction that was "phrased to elicit an answer as to whether the situation ... induce[d] a reasonable belief on part of [the] plaintiff that [the victim] was in imminent peril"); *Wagner*, 133 N.E. at 438 (refuting view that rescue doctrine should not apply when, in fact, rescue attempt was futile); *cf. Fullerton v. Sauer*, 337 F.2d 474, 482 (8th Cir.1964) (construing Iowa law to hold rescue doctrine did not apply when "only apparent or imminent danger" had passed). This summary-judgment record shows customers, employees, and property of The Gallery were in the vicinity of the fire and subsequent gas leak. While it is undisputed employees of The Gallery called the fire department and asked some patrons to evacuate, a jury could find Clinkscales's rescue efforts were a normal or natural reaction under the circumstances. He may have reasonably thought danger was imminent and, given his extensive training, his help was needed.

■ Exhortations to leave do not, as a matter of law, preclude liability in all cases. If a defendant sets into course a series of events that induces a rescue attempt, the defendant does not necessarily insulate itself from liability when it tells the rescuer to leave. In any event, in this case there is evidence no one effectively ordered Clinkscales to leave, and some evidence The Gallery enlisted the help of other customers to fight the fire. There is nothing inconsistent with an express general call to evacuate and an implicit individual invitation to help. Even if we were to assume Clinkscales was told to leave, however, this would be but one fact for the jury to consider in evaluating his rescue attempt.

We cannot say as a matter of law that the rescue doctrine does not apply to this case. A reasonable jury could find Clinkscales's rescue of Gallery employees, customers, and property was an act done in normal or natural response to the fear or emotional disturbance caused by The Gallery's negligence. Summary judgment on

the issue of proximate cause was not proper.

## C. An Open and Obvious Danger is No Bar to Recovery

 The district court and court of appeals applied the premises-liability law that persisted at common law and found Clinkscales was an invitee of The Gallery at the time the fire started. Under the common-law trichotomy of invitees, licensees, and trespassers, an invitee is a person "who is invited to enter or remain on land for the purpose directly or indirectly connected with business dealing with the possessor of land." *Konicek v. Loomis Bros., Inc.*, 457 N.W.2d 614, 618 (Iowa 1990). Invitees are owed the highest standard of care under the trichotomy: the possessor of land is obligated to use ordinary care to keep the premises reasonably safe for invitees, to ascertain the actual condition of the premises, and to make the area reasonably safe or give warning of the actual condition and risks involved. *Id.*

The parties do not ask us to re-examine the merits of the trichotomy, which is presently one of the most unsettled and contentious areas of Iowa law. *See Sheets v. Ritt, Ritt, & Ritt, Inc.*, 581 N.W.2d 602, 606 (Iowa 1998) (four of nine members of court favored abolishing distinction between invitees and licensees); *see also Anderson v. State*, 692 N.W.2d 360, 367–68 (Iowa 2005) (use of invitee instruction instead of reasonable care instruction affirmed by operation of law); *Alexander v. Med. Assocs. Clinic*, 646 N.W.2d 74, 79–80 (Iowa 2002) (six of seven members of court declined to abolish common-law trespasser rule). No one challenges that Clinkscales was an invitee. Only a corollary of the common-law premises-liability law is implicated here. The defendants argue, and the lower courts held, the defendants owed no duty to Clinkscales as a matter of law because the fire and gas leak constituted a "known and obvious danger." It is well settled that generally "[t]he possessor of land ... is not liable when the injuries sustained by a business invitee were caused by a known or obvious danger." *Konicek*, 457 N.W.2d at 618 (citing Restatement § 343A).

 Clinkscales argues the open and obvious-danger principle does not apply in this case, and we agree. Fire and escaping gas is obviously dangerous. That is not in doubt. This is not your garden-variety premises-liability case, however—it involves an attempted rescue. Absent imminent danger or the appearance thereof, the rescue doctrine is not applicable. *See, e.g., Weller v. Chi. & Northwestern R.R.*, 244 Iowa 149, 152, 55 N.W.2d 720, 721 (1952) (without imminent danger to child rescue doctrine inapplicable); *Klunenberg*, 256 Iowa at 740, 129 N.W.2d at 73 (similar case involving cow in cemetery); *cf. Fullerton*, 337 F.2d at 482 (applying Iowa law and concluding rescue instruction not proper for injuries sustained after rescue completed and when no further apparent or imminent danger to life or property). In a rescue case such as this, it is *axiomatic* that the danger approached is obviously dangerous. *See, e.g., Hollingsworth*, 553 N.W.2d at 598 (rushing into burning station wagon in victim's garage); *Clayton*, 254 Iowa at 378–79, 117 N.W.2d at 882 (remaining in burning apartment building to help others); *cf. Kester v. Bruns*, 326 N.W.2d 279, 283 (Iowa 1982) (holding rescue instruction not warranted because "it was unreasonable as a matter of law for [the plaintiff] to risk his life to prevent the remote possibility of some harm befalling his $90 pool cue"). *Danger* invites the rescue. To rule the presence of a known and obvious dangerous condition would, as a matter of law, negate any duty to invitee-

rescuers would completely eviscerate the rescue doctrine where the rescuer happened to be an invitee of the defendant when the condition first occurred. The "open-and-obvious-danger" rule is not absolute. *See* Restatement § 343A cmt. *f* (carving out an exception "where the possessor has reason to expect that the invitee will proceed to encounter the known or obvious danger because to a reasonable man in his position the advantage of doing so would outweigh the apparent risk") (quoted in *Konicek*, 457 N.W.2d at 618).

We have not accepted similar arguments in previous cases. For example, in *Johannsen*, the plaintiff saw a gasoline spill in the defendant's railroad yard. 232 Iowa at 807, 5 N.W.2d at 22. The plaintiff ran onto the defendant's property to stop the spill and suffered severe burns. *Id.* He sued the landowner for negligence and pled rescue. *Id.* The defendant argued it did not owe the plaintiff a duty of care because he was a trespasser. *Id.* We held the plaintiff's status as a trespasser was irrelevant because he was in a place where he had a right to be *when the danger occurred. Id.* at 812, 5 N.W.2d at 24. The pertinent question was not whether the plaintiff trespassed upon the defendant's land to effectuate the rescue, but rather whether the negligent acts of the defendant caused a danger that proximately caused the plaintiff's rescue attempt. *Id.;* *see also Clayton*, 254 Iowa at 378, 117 N.W.2d at 882 (rescuer "not regarded as a trespasser" for entering land of another to attempt rescue). Likewise, in the case at bar, it does not matter that Clinkscales was an invitee and that the grease fire and gas leak constituted an "open and obvious danger." *See Johannsen*, 232 Iowa at 811, 5 N.W.2d at 24 (remarking that the mere fact the plaintiff voluntarily encountered a known danger is not always a bar to recovery). The issue is whether the defendant's alleged negligent acts proximately caused Clinkscales's rescue attempt. If trespassers are not precluded as a matter of law from seeking recovery in rescue cases, nor should invitees simply because the danger encountered is a "known and obvious danger."

### D. Negligence

■ ▉ In the alternative, The Gallery argues that even if it owed Clinkscales a duty of care, it did not breach that duty. The district court ruled the defendants were not negligent, as a matter of law, because they asked patrons to leave, called the fire department, and used fire extinguishers. The defendants also point out they have operated the grill for fifteen years without incident and took "precautions to ensure the utmost safety."

We cannot say as a matter of law that The Gallery was not negligent as alleged in Clinkscales's petition. Questions of negligence are ordinarily reserved for the jury, and only in extraordinary cases is summary judgment proper. Iowa R.App. P. 6.14(6)(*j*); *Phillips v. Covenant Clinic*, 625 N.W.2d 714, 720 (Iowa 2001); *Scoggins v. Wal–Mart Stores, Inc.*, 560 N.W.2d 564, 566 (Iowa 1997); *Ruden v. Jenk*, 543 N.W.2d 605, 607 (Iowa 1996). There is testimony the defendants did not clean the grill regularly or sufficiently train their employees in grill cleaning. For example, one of the hoses leading from the propane tanks to the grill had a small "burn hole" in it. There is also evidence Moser permitted the grease fire to persist too long, at times unattended, until it became too large to contain. A jury could also find the defendants did not keep the appropriate type of fire-suppression equipment near the grill. A jury should decide whether The Gallery was negligent, and whether this negligence caused the grease fire, subsequent gas leak, and injuries to Clinkscales.

## E. Res Ipsa Loquitur

Res ipsa loquitur (Latin for "the thing speaks for itself") is a type of circumstantial evidence. *Brewster v. United States,* 542 N.W.2d 524, 529 (Iowa 1996). In Iowa, res ipsa loquitur applies in negligence cases when

> (1) the injury is caused by an instrumentality under the exclusive control of the defendant, and (2) the occurrence is such that in the ordinary course of things would not happen if reasonable care had been used.

*Novak Heating & Air Conditioning v. Carrier Corp.,* 622 N.W.2d 495, 498 (Iowa 2001); *accord Mastland, Inc. v. Evans Furniture, Inc.,* 498 N.W.2d 682, 686 (Iowa 1993). Res ipsa loquitur permits a jury to circumstantially "infer the cause of the injury from the naked fact of injury, and then to superadd the further inference that this inferred cause proceeded from negligence." *Benedick v. Potts,* 88 Md. 52, 40 A. 1067, 1069 (1898) (quoted in *Brewster,* 542 N.W.2d at 529). A jury is not required to draw the inference. *Brewster,* 542 N.W.2d at 529. Nor must a plaintiff "eliminate with certainty all other possible causes or inferences." *Id.* at 530. "The jury simply weighs the circumstantial evidence but in the end may or may not accept it as sufficient as to negligence or causation." *Id.* at 529.

In Iowa, we permit the plaintiff to plead res ipsa loquitur in addition to specific negligence as an alternate theory of the case. *Id.* at 530. Clinkscales did precisely this in his petition. Ordinarily the two theories are submitted to the jury together. *See id.* If the jury finds for the plaintiff on a specific negligence basis, however, it should not entertain res ipsa loquitur. *Id.*

For good reasons, the defendants do not deny the grill was in their exclusive control. Instead, they claim res ipsa loquitur does not apply in this case because a grease fire could happen in the absence of any negligence. Both the district court and court of appeals held the res-ipsa loquitur doctrine was not applicable to this case because grease fires can happen in the absence of a negligent act.

We disagree. The foregoing analysis improperly frames the question. The issue in this case is not simply whether a grease fire could happen in the exercise of ordinary care, because the "occurrence" in this case was not just a grease fire. After all, when Clinkscales approached the grill, the fire was extinguished. The problem was that gas was leaking from the propane tanks, and it appeared reignition of the fire might prove disastrous. Moser testified he heard an abnormal "pop and hiss" come from the grill before the grease fire spread to the tanks. We have repeatedly held the res-ipsa-loquitur doctrine may be applicable in gas leak cases. *See, e.g., Palleson v. Jewell Coop. Elevator,* 219 N.W.2d 8, 13–14 (Iowa 1974); *Blackman v. Iowa Union Elec. Co.,* 234 Iowa 859, 863, 14 N.W.2d 721, 724 (1944); *Sutcliffe v. Fort Dodge Gas & Elec. Co.,* 218 Iowa 1386, 1394–96, 257 N.W. 406, 410–11 (1934); *see also* Jay M. Zitter, Annotation, *Res Ipsa Loquitur in Gas Leak Cases,* 34 A.L.R.5th 1, 14 (1995) (recognizing "it is clear that in the ordinary course of things gas explosions will not occur, so that when one does occur, an inference of negligence may be reasonable and justifiable"). There is nothing exceptional about this case which indicates that this particular gas leak would ordinarily occur in the absence of negligence. Genuine issues of material fact exist, and therefore the district court erroneously excluded application of res ipsa loquitur from the case. Indeed, to rule otherwise would require Clinkscales to prove the precise cause of his injuries—

thus depriving him of the doctrine's benefit. *See Brewster,* 542 N.W.2d at 532.

Even if we were to ignore the leaking gas, it should be noted that courts have often applied the doctrine of res ipsa loquitur in actions against the occupant of a premises for personal injury caused by fire—including grease fires. *See, e.g., Aetna Cas. & Sur. Co. v. Brown,* 256 So.2d 716, 718 (La.Ct.App.1971) (holding res ipsa loquitur applicable to grease fire); *see also* 35A Am.Jur.2d *Fires* § 59 (2001). In the ordinary course of things, grease fires do not occur in the absence of negligence and cannot occur unless the party in exclusive control does something or fails to do something an ordinary person would do under the circumstances. Grease fires do not just happen.

### V. Conclusion

Summary judgment was not proper. This case is remanded for a trial on the merits.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED; REMANDED.**

All justices concur except STREIT, TERNUS, and CADY, JJ., who specially concur in part and dissent in part.

STREIT, Justice (specially concurring in part and dissenting in part).

I concur to the extent that I believe this rescuer deserves his day in court. The mere fact Clinkscales approached an open and obvious danger is not an absolute bar to recovery; rescue clearly presupposes danger or the appearance thereof. *Cf. Johannsen,* 232 Iowa at 811–12, 5 N.W.2d at 24. I respectfully dissent, however, because I believe the majority wrongly permits Clinkscales to pursue a res-ipsa-loqui-

tur theory. In doing so, the majority stretches that venerable doctrine far beyond its proper boundaries.

As the majority correctly points out, in Iowa res ipsa loquitur applies if

(1) the injury is caused by an instrumentality under the exclusive control of the defendant, and (2) the occurrence is such that in the ordinary course of things would not happen if reasonable care had been used.

*Novak,* 622 N.W.2d at 498. Because Clinkscales has not presented any evidence of either element, I would affirm the district court and court of appeals on this issue.

### No Exclusive Control

It is conceded The Gallery had exclusive control of the grill *at the time of the accident.* On the facts of this case, however, this is insufficient in itself to warrant a res ipsa-loquitur instruction. Exclusive control must be shown *at the time of the alleged negligence,* which is not necessarily the time of injury. *See Weyerhaeuser Co. v. Thermogas Co.,* 620 N.W.2d 819, 832 (Iowa 2000); *Oak Leaf Country Club, Inc. v. Wilson,* 257 N.W.2d 739, 744 (Iowa 1977); *Palleson,* 219 N.W.2d at 13; *Breeding v. Reed,* 253 Iowa 129, 137, 110 N.W.2d 552, 557 (1961); *see also Mobil Chem. Co. v. Bell,* 517 S.W.2d 245, 251 (Tex.1974); *McGuire v. Stein's Gift & Garden Ctr., Inc.,* 178 Wis.2d 379, 504 N.W.2d 385, 391 (Ct.App.1993). As we recently stated,

The plaintiff need only show that the defendant controlled the instrumentality at the time of the alleged negligent act.... The "exclusive control" requirement is simply another way of saying that the injury must be traced to a specific instrumentality or cause for which the defendant was responsi-

ble. . . . Where causes for the injury other than a defendant's negligence are equally probable, there must be evidence which will permit the jury to eliminate them. This means, for example, that a plaintiff injured by the explosion of a beer bottle purchased from a retailer will be required to make some sufficient showing that the bottle was not cracked by mishandling after it left the defendant's plant.

*Weyerhaeuser*, 620 N.W.2d at 832 (citations, internal quotations, and emphasis omitted).

The record before us shows, in undisputed fashion, that several parties other than the defendants played a role that gave rise to the state of the grill as it malfunctioned on the date of Clinkscales's injuries. The defendants special ordered the grill from two local men, who built it from standard parts. After the defendants purchased the grill, they regularly had the propane tanks switched out at a local filing station. This filling station also periodically replaced the devices that connected the tanks to the hoses that led to the grill, because the connections on the tanks themselves would change from time to time. Any of these parties, as well as any of the manufacturers of any of the parts they built, used, or serviced, could have performed a negligent act leading to Clinkscales's injuries. The same could be said for the patron extinguishing the fire. Without proving the cause of the fire, Clinkscales has presented no evidence that would permit a jury to eliminate any of these equally potentially negligent parties. Therefore res ipsa loquitur is inapplicable, and the district court and court of appeals were correct to strike this theory from Clinkscales's pleadings.[1]

### Grease Fires Happen

Nor has Clinkscales shown the grease fire was such that in the ordinary course of things it would not have happened if reasonable care had been used. As the district court and court of appeals both pointed out, grease fires commonly occur in the absence of negligence.

The classic English case of *Byrne v. Boadle*, 159 Eng. Rep. 299 (Ex. 1863), perhaps best illustrates the sorts of cases in which res ipsa loquitur properly applies, and how it works. In *Byrne*, a barrel of flour fell on the plaintiff, who was walking next to the defendant's shop. 159 Eng. Rep. at 299. Although one could readily infer the barrel came from the defendant's shop, the plaintiff could not show precisely how the defendant was negligent. *Id.* Nonetheless, the court thought the accident "spoke for itself" and therefore held

---

**1.** As a related matter, it should be remembered that res ipsa loquitur is not applicable simply because Clinkscales may not be able to show which specific acts of negligence caused his injuries. As one noted commentator has pointed out,

> res ipsa loquitur is sometimes invoked needlessly and inappropriately. If the trier can infer that the defendant was probably guilty of one of several specific acts of negligence but cannot be sure which act it was, res ipsa [loquitur] is not properly involved. . . . Although the jury might not be sure which of these negligent [acts] occurred, if it can conclude that one of them did, then the case is merely one of ordinary circumstantial evidence. . . . When courts

speak of res ipsa loquitur in cases like this perhaps no harm is done, but they risk confusing the process of inferring specific negligent acts with the process of estimating the probability of unknown acts of negligence.

1 Dan B. Dobbs, *The Law of Torts* § 154, at 372–73 (2001) (footnote omitted). While Clinkscales has presented a number of independent theories as to how the defendants were negligent and should be permitted to make his case to the jury on each, res ipsa loquitur is not available simply because there is uncertainty at this stage in the proceedings about which particular theory may win the day. The majority's decision falls into precisely this trap.

the defendant was negligent, albeit in some unspecified way. *Id.* at 301.

The case at bar is manifestly unlike *Byrne.* Grease fires—unlike barrels of flour falling from the sky—occur in the absence of negligence. Put simply, res ipsa loquitur should not apply here because this is not the sort of case for which the doctrine was designed. In holding to the contrary, the majority stretches res ipsa loquitur beyond its proper scope.

TERNUS and CADY, JJ., join this special concurrence in part and dissent in part.