# IN THE COURT OF APPEALS OF IOWA

No. 22-0499
Filed April 10, 2024

**ATIBA A. SPELLMAN,**
 Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
 Respondent-Appellee.

_____

Appeal from the Iowa District Court for Story County, Amy M. Moore, Judge.

Atiba Spellman appeals the grant of summary judgment and dismissal of his application for postconviction relief. **AFFIRMED.**

Jesse A. Macro Jr. of Macro Law, LLP, Des Moines, for appellant.

Brenna Bird, Attorney General, and Bridget A. Chambers, Assistant Attorney General, for appellee State.

Considered by Bower, C.J., and Greer and Chicchelly, JJ.

**BOWER, Chief Judge.**

Atiba Spellman appeals the grant of summary judgment and dismissal of his application for postconviction relief (PCR). Spellman contends the court should have reached the merits of his claim that his PCR counsel was ineffective for failing to "timely depose trial counsel." Upon our review, we affirm.

## I. *Background Facts and Proceedings*

In 2009, a jury found Spellman guilty of two counts of first-degree murder. This court previously set forth the following facts surrounding the incident leading to Spellman's charges as follows:

> On December 6, 2008, Spellman killed Shakena Varnell (also known as Amy) and Michael Odikra by stabbing them several times with a knife. Amy was Spellman's common law wife, and they had been a couple for approximately eight years. She had two children from a previous relationship, and the children viewed Spellman as their stepfather. Amy was having an affair with Odikra. Evidence at trial indicated Spellman knew, or at least strongly suspected, that the affair was going on several months prior to the night of the murders. This evidence includes the testimony of various people who stated Spellman told them he thought Odikra and Amy were having an affair and that he wanted to harm Odikra.
>
> At 6:30 p.m. on December 5, Spellman called Amy's uncle, David Varnell, and told David that Odikra and Amy were having an affair. At 9:00 p.m. Spellman picked up Amy's son at the movies. They drove to Odikra's residence, and Spellman told the boy to look under the garage door to confirm Amy's car was there. They then waited outside the residence for approximately three hours, and around midnight, Spellman drove Amy's son home. Phone records revealed Spellman called Amy's phone approximately forty-one times that night. He also called several people in an attempt to contact Amy, and these witnesses testified Spellman seemed very agitated. When Amy called her son's phone Spellman spoke with her and told her to "stop playing these games."
>
> Phone records further revealed that at approximately 12:30 a.m., Spellman called his supervisor at the Ames Tribune to report that he would not be able to deliver the morning paper due to car trouble and that he had broken down in Waterloo. At 2:07 a.m., Spellman spoke with an old friend, Levarn Davis, and said he was driving to Waterloo. Davis then tried to reach Amy because he was

afraid for Amy's safety, but he got no answer. The records showed Spellman was not truthful about his location and that he was actually in Ames.

At approximately 2:15 a.m., Odikra's body was discovered outside Amy's residence, and Amy was found inside the apartment door. Both were unclothed. Blood from the two victims and Spellman was found in the residence. Additionally, there were signs of forced entry—the door had been dead bolted shut but had been forced open, resulting in several splinters from the door frame throughout the entryway. An autopsy showed Amy had a total of thirteen stab wounds as well as blunt force trauma, and Odikra had seven stab wounds, defensive wounds, and blunt force trauma.

A warrant was issued for Spellman's arrest. At 10:30 a.m. on December 6, Spellman called David, and David informed Spellman the victims were dead. At 11:30 a.m., Spellman called Davis and said that he was in Des Moines. Davis gave Spellman a phone number for the authorities and told him he should call. On December 7, Spellman called Special Agent Don Schnitker, who informed him warrants had been issued. Spellman stated he was in Des Moines and would turn himself in the following day; however, he never arrived at the police station.

Phone records indicated Spellman was traveling around the central and south eastern parts of United States during these two days, and on December 8, he was in Raleigh, North Carolina. Iowa authorities contacted the police in Wayne County, North Carolina and requested they be on the lookout for Spellman's car. The morning of December 8, Spellman was apprehended by state police in Wayne County and transported back to Iowa. After searching his car, authorities discovered blood of both Amy and Odikra. It also appeared the floor board had been scrubbed clean.

On December 29, 2008, Spellman was charged with two counts of murder in the first degree, in violation of Iowa Code sections 707.1 and .2 (2007). A jury trial was held, and while Spellman admitted he killed the victims, he argued he did so in the heat of passion; therefore, he was only guilty of voluntary manslaughter. On March 24, 2009, the jury returned a verdict of guilty as to both counts of first-degree murder.

*State v. Spellman*, No. 13-1670, 2015 WL 799538, at *1–2 (Iowa Ct. App. Feb. 25, 2015).

This court affirmed Spellman's convictions on direct appeal. *Id.* at *5. Spellman filed his original pro se PCR application on December 15, 2015, which was amended on March 24, 2018. The district court dismissed the petition, and

Spellman appealed. This court found the sanction of dismissal was an abuse of discretion under the facts and reinstated the case in 2019. *Spellman v. State*, No. 18-0852, 2019 WL 4302124, at *4 (Iowa Ct. App. 2019). The State subsequently filed a motion for summary judgment, which after arguments, was granted on January 19, 2022. Spellman appeals.

## II.     Standard of Review

"We generally review a district court's denial of an application for postconviction relief for errors at law." *Doss v. State*, 961 N.W.2d 701, 709 (Iowa 2021). However, "our review is de novo '[w]hen the basis for relief implicates a violation of a constitutional dimension," including claims of ineffective assistance of counsel. *Id.* (alteration in original) (quoting *Moon v. State*, 911 N.W.2d 137, 142 (Iowa 2018)); *see Sothman v. State*, 967 N.W.2d 512, 522 (Iowa 2021).

## III.    Analysis

*A. Summary Judgment for Postconviction Relief.* Iowa Code section 822.6 (2021) governs disposition of a PCR application without a trial on the merits. *Manning v. State*, 654 N.W.2d 555, 559–60 (Iowa 2002). The goal "is to provide a method of disposition once the case has been fully developed by both sides, but before an actual trial." *Id.* at 559 (emphasis omitted) (citation omitted). This "is 'analogous to the summary judgment standard' in Iowa Rules of Civil Procedure 237–40 (now rules 1.981–1.983)." *Id.* at 559–60 (citing *Summage v. State*, 579 N.W.2d 821, 822 (Iowa 1980)).

Summary judgment is appropriate only when the record shows no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Iowa R. Civ. P. 1.981(3). The State, as the moving party, bears the burden

of showing the absence of a genuine issue of material facts. *Sheffey v. State*, No. 22-1693, 2023 WL 5601836, at \*1 (Iowa Ct. App. Aug. 30, 2023). The court views the record in the light most favorable to Spellman and draws all legitimate inferences from the record in his favor. *Id.*

When ruling, "the court does not weigh the evidence." *Linn v. State*, 929 N.W.2d 717, 729 (Iowa 2019) (citing *Clinkscales v. Nelson Sec., Inc.*, 697 N.W.2d 836, 841 (Iowa 2005)). The court determines, faced with the evidence presented, whether a reasonable jury could return a verdict for the nonmoving party. *Clinkscales*, 697 N.W.2d at 841. If, when taken as a whole, a rational trier of fact could find for the nonmoving party, there is a genuine issue of material fact, and the matter should proceed to trial. *Linn*, 929 N.W.2d at 730.

Spellman claims there is a genuine issue of fact regarding the strategy used by his trial counsel during his underlying criminal case. He claims "[t]he contradiction between [his] desires and the presentation made by his trial counsel generates a genuine question of fact." Spellman also argues he was "not properly prepared for trial by his trial counsel." As such he claims he "was not prepared to answer the questions posed" and "his answers were not helpful to his defense."

As the State properly points out, "The law is clear that questions of trial strategy, including the defense or defenses to raise, is for counsel so long as counsel's strategic decision is a reasonable one." *See Forsyth v. State*, No. 03-1378, 2004 WL 1161614, at \*3 (Iowa Ct. App. May 26, 2004) (noting counsel breached no essential duty by electing to pursue a fact-based defense rather than a psychiatric defense; defense counsel's trial strategy was reasonable under the facts of the case and was "justifiable"). Additionally, the State correctly points out,

"[Spellman's] affidavit merely asserts that he and his attorney disagreed on trial strategy and alleged that, if his attorney had filed a notice of self-defense, additional evidence would have been admitted regarding prior violence by one of the victims against Spellman." The district court properly granted summary judgment.

*B. Ineffective Assistance of PCR Counsel.* To prevail on a claim of ineffective assistance of counsel, Spellman must show (1) counsel breached an essential duty and (2) prejudice resulted. See *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "We may affirm the district court's rejection of an ineffective-assistance-of-counsel claim if either element is lacking." *Anfinson v. State*, 758 N.W.2d 496, 499 (Iowa 2008).

Spellman argues his trial attorney was ineffective in failing to raise a defense of justification to the charges of first-degree murder. He claims his PCR attorney was ineffective for failing to depose trial counsel. However, as noted in the State's brief, this issue is being raised for the first time on appeal and "there is no evidence in the record as to why Spellman's postconviction attorney did not dispose [his] trial attorney, Paul Rounds, or whether Mr. Rounds would have testified that there was a conflict between Spellman and him on the issue of whether to raise a justification defense."

As such, Spellman's claim for ineffective assistance of PCR counsel cannot be resolved due to an inadequate record. *See Brown v. State*, No. 22-0459, 2023 WL 3335384, at *4 (Iowa Ct. App. May 10, 2023) (noting in an appeal from the denial of PCR, this court declined to reach the merits of Brown's claim of ineffective assistance of PCR counsel because the record was inadequate but also

recognizing *Goode v. State*, 920 N.W.2d 520, 526 (Iowa 2018) provides "a 'narrow exception' allowing an appellate court to reach the merits of an unpreserved claim that PCR trial counsel was ineffective if the existing record is sufficiently developed to allow resolution"). As explained in *Goode* and *Brown*, Spellman would need additional evidence to support his claim he received ineffective assistance of PCR counsel. As a result, we cannot resolve this matter.

Spellman asks we remand the case for a new trial. He insists this remedy is the only way he can receive the level of representation to which he is entitled. But in *Goode*, our supreme court rejected the idea of a remand, finding it was "contrary to the symmetry of our appellate process and our role as a court of review." *See* 920 N.W.2d at 526.

We need not decide whether a remand would be proper to resolve a claim of ineffective assistance of PCR counsel. It is enough to decide it is unnecessary here. We only "preserve" claims of ineffective assistance of PCR counsel for future proceedings when they meet the same standard of "stat[ing] the specific ways in which counsel's performance was inadequate and identify[ing] how competent representation probably would have changed the outcome." *Dunbar v. State*, 515 N.W.2d 12, 15 (Iowa 1994). Spellman fails the *Dunbar* test. Spellman complains about a failure to depose trial counsel regarding his claimed ongoing conflict about his defense. Without more facts, we cannot determine if PCR counsel had a material duty to depose trial counsel and what, if any, errors this caused. As in *Dunbar* and *Brown,* Spellman's claims are "too general in nature" to allow us to preserve them for a second PCR proceeding. *Dunbar*, 515 N.W.2d at 15 (finding "[f]or example, Dunbar does not propose what an investigation would have

revealed or how anything discovered would have affected the result obtained below"). In the end, we can neither address nor preserve the claim PCR counsel was ineffective.

**AFFIRMED.**